## STOW *against* CONVERSE.

Where *A.* printed and published of *B.*, who had been a member of the convention that formed the constitution of the state, that *B.*, while in the convention, "openly avowed the opinion, that government had no more right to provide by law, for the support of the worship of the Supreme Being, than for the support of the worship of the devil;" it was held, that these words were libellous, as tending to disgrace *B.*, to deprive him of the esteem of mankind, to exclude him from intercourse with men of piety and virtue, and render him odious and detestable.

The defendant, in justification, having adduced evidence to prove, that such words were uttered by the plaintiff in convention, the plaintiff, to rebut such evidence, offered a newspaper, containing an account of the debates in the convention on that subject, prepared by the defendant, as a reporter of the debates, and published by him, in which the words in question did not appear : Held, that the evidence so offered by the plaintiff was relevant and admissible, as conducing to prove the falsehood of the alleged libel, and the malice of the defendant.

The defendant, in justification of a charge against the plaintiff of unfairness and partiality in his office, as collector of the *United States* taxes, having proved, that the plaintiff had refused to receive bills of the *Middletown* bank in payment of a tax, the plaintiff, to rebut such evidence, offered a circular letter of instructions, addressed to him, from the commissioner of the revenue, designating the description of bills, which the collector should receive : Held, that the evidence so offered by the plaintiff was admissible, as evincing the fairness and impartiality of his conduct.

The defendant, in justification of words, charging the plaintiff with "having seduced his early companions to join an infidel club, by him and others set up and supported,"—with "having attempted to destroy all the religious institutions of the state,"—and with "having insulted the clergy, who had offered their services in the parish where he resided," having adduced evidence, consisting of the conduct and declarations of the plaintiff, for about thirty years previous to the publication complained of, the plaintiff, to rebut such evidence, offered witnesses, who had been acquainted with him, to prove, by his uniform profession, conduct and conversation, that from his

New-Haven,
July,
1820.

Stow
v.
Converse.

youth up to the time of the publication, he was a believer in the christian religion, in the divine authority of the scriptures, and in the divinity and atonement of the Saviour: Held, that the evidence so offered by the plaintiff, was admissible, to prove his religious opinions; but if otherwise, yet as it was admitted merely to rebut evidence of the plaintiff's infidelity, and as the point in issue related not to his opinions, but to his conduct, the defendant could not except to its admission as a ground for a new trial.

To rebut evidence, adduced by the defendant, to establish the truth of certain specific charges against the plaintiff of official misconduct, the plaintiff offered witnesses to prove, that he had ever sustained the character of an honest man: Held, that such proof was inadmissible.

A collector of the direct tax of the *United States*, under the act of Congress, approved *January* 9th, 1815, is not entitled to a commission of five *per cent.* except in cases of actual distress and sale.

A party, charged with unfair, partial and unjust conduct, in the exaction of commissions not authorized by law, cannot repel that charge, by shewing, that they were taken honestly, through a mistaken construction of the law.

*Qu.* Whether the provisions of the late statute, *tit.* 66. *c.* 1. *s.* 8. are so far repugnant to the constitution of the state, as to be repealed by it.

THIS was an action for a libel, tried at *New-Haven, January* term, 1820, before *Peters*, J.

The declaration was as follows: That for more than five years previous to the 30th day of *April*, 1819, the plaintiff was collector of the internal duties and taxes of the *United States* for the sixth collection district, composed of the county of *Middlesex* in said state, duly appointed under the authority of the *United States*;—and for more than four years previous to the 30th day of *April*, 1819, the plaintiff was post-master for the city of *Middletown*, in said state, duly appointed;—and for more than one year previous to the 10th day of *July*, 1818, the plaintiff was a director of the office of discount and deposit of the bank of the *United States*, commonly called the *United States Branch Bank*, located in said *Middletown*;—and the plaintiff now is, and ever has been, an honest, just, and faithful citizen of *Connecticut*, and as such, hath always behaved and conducted himself, and having been educated in the christian religion, now is, and always has been, a believer that the christian religion is true, and that the Holy Scriptures of the Old and New Testament, are of divine authority. And the plaintiff hath not ever been guilty, or until the time of committing the several grievances by the defendant hereinafter mentioned, been suspected to have been guilty, of denying the being of a God, or denying the christian religion to be true, or the Holy Scriptures of the Old and New Testa-

ment to be of divine authority ;—and hath never been guilty, or until the time of committing the grievances by the defendant hereinafter mentioned, been suspected to have been guilty, of unfairness, partiality, extortion, oppression, or corruption, as collector aforesaid, or under colour of his said office of collector ;—and hath never been guilty, or until the time of the committing, by the defendant, of the grievances hereinafter mentioned, been suspected to have been guilty, of extortion, or illegal exactions in his said office of director of the *United States Branch Bank,* located in said *Middletown ;*—and hath never been guilty, or until the time of committing the several grievances hereinafter mentioned, been suspected to have been guilty, of neglecting his duties to the public, or to the *United States,* in his said office of post-master, or of farming said post-office to the keeper of a turnpike gate, or either of the crimes, or illegal acts, aforesaid ; by means of which said premises, he, the plaintinff, before the committing of the several grievances, by the defendant, as hereinafter mentioned, had deservedly obtained the good opinion, and credit of his neighbours, and other good and worthy citizens of this state. But the defendant, well knowing the premises, but wickedly contriving, and maliciously intending, to injure the plaintiff, in his good name, fame, credit, and reputation ; and to bring him into public scandal, infamy and disgrace, with and amongst all his neighbours, and other good and worthy citizens of this state ; and to cause it to be suspected and believed, that he, the plaintiff, having been educated in the christian religion, had been guilty, by writing, teaching, or advised speaking, of denying the being of God, and his holy attributes, and of denying the christian religion to be true, and the Holy Scriptures of the Old and New Testament to be of divine authority, and of denying the true God, and his government of the world ; and to subject him, the plaintiff, to the pains and penalties, by the laws of this state, made and provided against, and inflicted upon, persons guilty of blasphemously and wickedly denying the true God, and his government of the world, or having been educated in the christian religion, denying, by writing, teaching, or advised speaking, the being of a God, and his holy attributes, or denying the christian religion to be true, or the Holy Scriptures of the Old and New Testament to be of divine authority ; and to cause it to be suspected and believed,

that the plaintiff had been guilty of unfairness, partiality, bribery, oppression, extortion, and corruption in his said several offices of collector of the internal taxes and duties aforesaid, and as director of the branch bank of the *United States Bank* aforesaid, located in *Middletown* aforesaid ; and to cause it to be suspected and believed, that the plaintiff had grossly and illegally neglected the duties of the post-office aforesaid, while he, the plaintiff, was post-master as aforesaid ; and to subject the plaintiff to the prosecution, pains, damages or penalties, provided by the laws of the *United States*, against each and every collector of the internal taxes and duties aforesaid, who shall exercise, or be guilty of, any extortion or oppression, under colour of his office, or the act of the *United States* imposing said internal taxes and duties, or shall, under such colour, demand other or greater sums than shall be authorised by law ; and to subject the plaintiff to a public prosecution and punishment for extortion and oppression ; and to cause it to be suspected and believed, that the plaintiff had been guilty of extortion, and exacting illegally sums of money from various persons in this state, under colour of his said office of director of the branch bank aforesaid, and to subject the plaintiff to prosecution and punishment therefor ; and to cause it to be suspected and believed, that the plaintiff had notoriously and shamefully neglected the duties appertaining to said office of post-master, and had farmed out said post-office to the keeper of a turnpike-gate ; and to vex, harrass, impoverish, and wholly ruin the plaintiff, heretofore, to wit, on the 10th day of *March*, 1819, at said city of *New-Haven*, the defendant did falsely, wickedly, and maliciously publish, and cause and procure to be published, in a certain newspaper, edited and published by the defendant, in said city of *New-Haven*, called " The Connecticut Journal," a certain false, scandalous, malicious, and defamatory libel, of and concerning the plaintiff, containing, among other things, the false, scandalous, malicious, defamatory, and libellous matter following, to wit : " Let those of his" (meaning the plaintiff's) " early companions, who are yet living, and who are seduced to join an infidel club, by him" (meaning the plaintiff,) " and others set up and supported," (meaning that he, the plaintiff, with others, had established within this state, and continued to maintain, and now continued to maintain, an infidel club, or association, in which he, the plaintiff, by writing, teaching, or advised

speaking, had denied, and continued to deny, the true God, and his government of the world,—and had denied, and continued to deny, the being of a God, and his holy attributes, and that the christian religion is true, and to teach that the Holy Scriptures of the Old and New Testament are not of divine authority ; and that the plaintiff had seduced, and continued constantly to seduce, the early companions of his, the plaintiff's youth, and others, citizens of this state, to join said club, and that he, the plaintiff, has taught, and inculcated to such persons, whom he had thus seduced, and continued to teach them in said club, that the christian religion is not true, and that the Holy Scriptures aforesaid are not of divine authority,) "tell of his," (meaning the plaintiff's) "virtues, and of the blessings they have derived from his company—let the parish in which he lives speak his virtues—his" (meaning the plaintiff's) " attempts, and but too successful, to destroy all religious institutions," (meaning that the plaintiff had attempted, and successfully attempted, to destroy all the religious institutions of the state of *Connecticut*,) "his" (meaning the plaintiff's) "insults to the clergy, who have offered their services in the parish," (meaning and intending so to be understood, that the plaintiff had insulted and abused the reverend clergy, who had offered to officiate as clergymen in the society or parish to which the plaintiff belongs.) " Let it be remembered, that this would-be-senator," (meaning the plaintiff, "while in the convention," (meaning the convention for devising and forming a constitution of civil government for the state of Connecticut,) "openly avowed, that in his" (meaning the plaintiff's) "opinion, the government had no more right to provide by law for the support of the worship of the Supreme Being, than for the support of the worship of the devil," (meaning that the plaintiff, when a member of the convention for forming the present constitution of this state, had openly, and as a member of said convention, declared, that it was as proper, and as much the right of government to provide by law for the worship of the devil, as of the Supreme Being.)

And in a certain part of which said libel there is and was contained the following false, scandalous, libellous and malicious matter, of and concerning the plaintiff, to wit :—" Let those, who have been compelled to pay their taxes to him" (meaning the plaintiff,) " as collector of the national tax,

New-Haven,
July,
1820.

Stow
v.
Converse.

42

*New-Haven,*
*July,*
*1820.*

*Stow*
*v.*
*Converse.*

speak of his" (meaning the plaintiff's) "fairness and impartiality in his" (meaning the plaintiff's,) "exactions,—of the justness of his" (meaning the plaintiff's) "demands, and of his" (meaning the plaintiff's) "fees of office." Meaning thereby, and intending so to be understood, that the plaintiff, as collector of the internal tax and duties, under the authority of the *United States*, for the district aforesaid, had made illegal, unfair, partial and extortious exactions, from divers good people of this state, by colour of said office of collector, and had been guilty of extortion and oppression, and of demanding, illegally and unjustly, divers sums of money from various persons, by colour of said office of collector.

And in a certain other part of said libel, there was, and is contained the following false, scandalous, libellous and malicious matter, of and concerning the plaintiff, to wit:—" Let the customers of the bank" (meaning the *United States Branch Bank* aforesaid) " inform the public, what sums he" (meaning the plaintiff,) " has exacted for lending his" (meaning the plaintiff's) " aid as director, in procuring their notes discounted," (meaning that the plaintiff had, as one of the directors of said Branch Bank, illegally exacted, of the customers of said bank, divers sums of money, for his services in procuring their notes to be discounted, and had, while a director as aforesaid of said Branch Bank, been bribed to procure notes to be discounted by said bank.

And in a certain other part of said libel, there was and is contained the following false, scandalous, libellous and malicious matter, of and concerning the plaintiff, to wit:—" Let the citizens of *Middletown* say, what services he" (meaning the plaintiff,) " renders, for the eight or nine hundred dollars a year, which he" (meaning the plaintiff,) " receives as post-master. It ought to be known by the government of the *United States*, and particularly, by that class of community, who condemn high salaries and sinecure places, that post-master *Stow* lives in *Middlefield*, three or four miles from the city of *Middletown*, where the post-office is by law established, that he" (meaning the plaintiff,) " pays no other attention to the office than to farm it out—that for a part of the time, during the past year, the office has been farmed out to the keeper of a turnpike-gate," (meaning that the plaintiff paid no attention to the duties of said office of post-master, while he held the same, but notoriously neglected the duties of said office, and

let out the post-office aforesaid to the keeper of a turnpike gate.)    By means of the committing of all which said several grievances by the defendant, the plaintiff has been, and is, greatly injured, in his good name, fame, credit and reputation, and brought into public scandal, disgrace and infamy with and amongst his neighbours, and other good citizens of this state, both in said city of *New-Haven*, and elsewhere, by whom the innocence and integrity of the plaintiff in the premises were unknown, and who, since the committing of the said several grievances by the defendant, have, in consequence thereof, suspected and believed, and still do suspect and believe, that the plaintiff has in fact been guilty of all the offences and illegal acts charged upon him in said libel of the defendant.    By means whereof, the plaintiff has been subjected and exposed, and now is subject and exposed, to be publicly prosecuted, as an infidel, and as one who has been guilty of denying the true God, and his government of the world, or denying, by writing, teaching, or advised speaking, the being of a God and his attributes, or denying the christian religion to be true, or denying that the Holy Scriptures of the Old and New Testament are of divine authority ; and the plaintiff has been, and now is, in consequence of the premises, exposed to be prosecuted as one, who has been guilty of oppression and extortion, under colour of an office, as collector of the internal taxes and duties of the *United States ;* and hath been subject to be prosecuted as one who has been guilty of illegal exactions, and extortion, as a director of the branch bank aforesaid ; and is liable to be prosecuted for negligence, and total inattention to the duties of the post-office aforesaid.

On the trial, the defendant, having given notice, that he should offer evidence to prove the truth of the charges contained in the publication set forth in the declaration, offered evidence to prove, and claimed that he had proved, that the plaintiff, as a member of the convention for forming the present constitution of the state, in convention, while debating on the 7th article of the constitution, uttered the language attributed to him, in the publication claimed to be libellous ; to rebut which the plaintiff introduced evidence to prove, and claimed that he had proved, that he did not utter such language ; and to prove that the defendant well knew this, and that the publication was made by him maliciously, the plaintiff offered to prove, that the defendant was reporter of the de-

*New-Haven,*
July,
1820.

Stow
*v.*
Converse.

*New-Haven,* bates and proceedings of the convention, and to read in evi-
July,    dence an account of the debates on the 7th article, as reported
1820.    by the defendant, and by him published in *The Connecticut*
Stow    *Journal,* No. 2157. dated *September* 29th, 1818.    To the ad-
v.    mission of this evidence the defendant objected; but the judge
Converse.    overruled the objection, and admitted the evidence, for the
purpose of shewing the malice of the defendant in the alleged
libel.

The defendant, in order to justify that part of the alleged
libel, which relates to the plaintiff's conduct as collector of
the *United States* tax, introduced evidence to prove, that the
plaintiff, in *November,* 1815, had refused to receive, in pay-
ment of a tax from *Oliver Prout,* bills of the *Middletown* bank;
to rebat which the plaintiff offered to read in evidence a cir-
cular letter of instructions, addressed to him, from *Samuel H.
Smith,* commissioner of the revenue, dated *August,* 18th,
1815, designating the description of bills, which the collector
should receive.    To the admission of the last mentioned evi-
dence the defendant objected; but the judge overruled the ob-
jection, and suffered the plaintiff to read such letter to the jury,
to prove, that he had not acted unfairly, or partially, in refu-
sing *Middletown* bills.

In justification of that part of the alleged libel, which relates
to the infidelity of the plaintiff, and his conduct as an infidel,
the defendant introduced witnesses to prove, both from the
conduct and declarations of the plaintiff, for about thirty years
next before the publication complained of, that the assertions
therein made were true.    To rebut this testimony, the plain-
tiff offered witnesses, who had been acquainted with him, to
prove, by his uniform profession, conduct and conversation,
that from his youth up to the time of the publication, he was a
believer in the christian religion, and in the divine authority
of the scriptures, and in the divinity and atonement of the Sav-
iour; to all which the defendant objected, contending that the
plaintiff could not thus, by his own declarations, make evi-
dence for himself; but the judge overruled the objection, and
permitted the testimony, so offered by the plaintiff, to go to
the jury.    After the testimony on both sides, relating to the
point, had been received, the plaintiff claimed, that the whole
was irrelevant to the issue, and that the judge ought so to in-
struct the jury.

In further justification of that part of the alleged libel, which relates to the conduct of the plaintiff as collector of the *United States* tax, the defendant claimed, that he had proved, by the testimony of many witnesses, that he had demanded and received of several persons, five *per cent.* on the amount of the taxes, as commissions, without ever having distrained or sold property for such taxes. The plaintiff, on his part, introduced evidence to prove, and claimed that he had proved, that all these persons were delinquents, and had not paid their respective taxes, within the time prescribed by law ; and that previous to the demand by the plaintiff, and the receipt of the five *per cent.*, every step had been taken by the plaintiff, as collector, required by law, previous and preparatory to distraining the property ; that the proof adduced by the defendant was, therefore, no justification of the charges against the plaintiff; and that, at any rate, it was only a mistake, or mistaken construction of the law, in demanding and receiving the five *per cent. ;* and therefore, not unfair, partial or unjust. But the defendant contended, that the judge ought to instruct the jury, that if the plaintiff had demanded and received the five *per cent.* commissions, without distress and sale, this was a justification to that part of the alleged libel.

The defendant further claimed, that the judge should instruct the jury, that those parts of the alleged libel, which related to the plaintiff's conduct as post-master, and to his declarations in the convention, were not actionable, when taken in connexion with the whole publication.

The plaintiff, in order to rebut the proof introduced, on the part of the defendant, to justify those parts of the publication relating to the plaintiff's conduct as collector and bank director, offered proof, that the plaintiff had ever sustained the character of an honest man ; to which the defendant objected ; but the judge decided, that it was admissible, and permitted it to go to the jury.

The judge charged the jury as follows : " This is an action of trespass on the case, for making and publishing a libel, or written slander, of the plaintiff, the essence of which is falsehood and malice, which, in legal understanding, is wilfulness, or the doing of a wrong act, wilfully. The publication complained of, is admitted to have been made by the defendant ; and he has attempted to prove it ; with what success, you are now to decide. The plaintiff's declaration contains five spe-

*New-Haven,*
*July,*
*1820.*

Stow
*v.*
Converse.

cifications of libellous matter, in this publication; and construes them, by *innuendoes*, or explanations of their meaning, according to his views. The three first may be resolved into the general charge of being an infidel, attempting to propagate infidelity, and destroy the religious institutions of this state. By *an infidel* is to be understood a person educated a christian, who denies the being of a God, or any one of the Persons in the Holy Trinity to be God, or asserts that there are more Gods than one, or denies the christian religion to be true, or the Holy Scriptures of the Old and New Testament to be of divine authority; which are crimes punishable by statute. The other specifications are for malconduct in the offices of collector, post-master and bank director. By the laws of the *United States*, a collector of internal revenue and direct taxes, is entitled to a commission on those taxes, only in case of actual distress and sale. But if the plaintiff has honestly taken this commission, by mistake, or a mistaken construction of the law, he cannot be said to be unfair, partial or unjust. As the publication is admitted, you have only to enquire whether it be true or false; and whether the *innuendoes*, or explanations of its meaning, by the plaintiff, are substantially correct or not. Judges and juries are to understand this publication as others do. You will, then, take this case into consideration, and if you find that the fair import of this publication is as explained by the plaintiff, and that the defendant has failed to prove the specifications thereof, as alleged in the declaration, or any of them, to be true, your verdict will be for the plaintiff to recover of the defendant such sum in damages as you may think just and reasonable; otherwise, your verdict will be for the defendant."

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial, on the ground that the several questions with regard to the admission of evidence were erroneously decided, and that the charge was incorrect. This motion the judge reserved.

*Daggett* and *Staples*, in support of the motion, contended, that a new trial ought to be granted, on the following grounds.
　1. Because the judge admitted the paper containing the debates of the convention, taken by the defendant, to shew what the plaintiff *did not say* in the convention, as evidence of *malice* in the defendant. To warrant an inference of malice

New-Haven,
July,
1820.

Stow
v.
Converse.

from the omission, it must appear that the defendant was bound to report *all* that was said in the convention. But nothing more appears, than that he undertook to give, and did give, an account of the proceedings. It does not appear, that he professed to publish all that was said in debate ; nor that this was ever expected from him ; nor that he had the requisite skill of doing it. The omission might have been made from mistake, from necessity, or even from tenderness to the speaker ; and therefore, it furnishes no presumption that the observations omitted were not in fact made. The paper is evidence of nothing but the omission ; but as that omission may have taken place, by accident, from want of time or skill, from an occasional absence of the reporter, or even from praiseworthy motives, it does not furnish, in connexion with a subsequent publication, the slightest presumption that such publication is *false*, much less that it is *malicious*.

2. Because the judge admitted, as evidence, the letter of instructions from *Samuel H. Smith*, commissioner of the revenue. It was the sole province of the law to determine what sort of money the plaintiff was authorized to demand ; but these instructions are not the law ; nor are they evidence of the law ; nor can they have any effect upon the law.

3. Because the declarations of the plaintiff were admitted to disprove the charge of infidelity, and to rebut the defendant's evidence in support of that charge. They were the declarations of a party, in his own favour, not under oath. Such evidence is never admissible, except in two cases. The first is, where they constitute a part of the *res gesta*. The second is, where they constitute part of an admission, proved by the opposite party ; in which case the party against whom the admission is proved, has a right to call for the *whole* of the admission ; but he cannot explain such admission, by his declarations at another time. Here, the *res gesta* was the plaintiff's *infidelity* ; of which his declarations were, at most, but evidence ; they did not, *per se*, constitute infidelity. Nor were they offered as part of any admission proved against the plaintiff. A man charged with having a foul disease, brings an action of slander. The defendant proves an admission by him, that he had the disease imputed to him. Now, can the plaintiff prove his own declarations, at other times, to shew, that he had not the disease ? Can the party against whom an admission is proved, repel the effect, by proving that he has

HARVARD
LAW SCHOOL
LIBRARY

told a different story, at other times ?  A believer in the christian religion, in the divine authority of the scriptures, and in the divinity and atonement of the Saviour, will never declare his disbelief of these truths ; but a disbeliever will assert his belief, whenever it will promote his views.

4. Because the judge instructed the jury, that although the plaintiff took the commission of five *per cent.* illegally,  yet if he honestly took it, by mistake, or under a mistaken construction of the law, he could not be said to be unfair, partial or unjust.   That the collector is not entitled to this commission, except in case of *sale*, is perfectly clear from the act of Congress.   4 *Laws U. S.* 752, 3. *sect.* 26.   If the plaintiff took the money illegally, did he not take it unjustly ?  And if the exaction was illegal and unjust, does the plaintiff's mistake, or mistaken construction of the law, render it otherwise ?  To give it this effect, would be bringing ignorance to a good market.   It would subvert the first principles of criminal jurisprudence.

5. Because the judge permitted the plaintiff, for the purpose of rebutting the evidence of the defendant against him as bank director and collector, to adduce proof that he had ever sustained the character of an honest man.   The publication complained of had made specific charges of malconduct against the plaintiff ; and the defendant had introduced proper evidence to justify those charges.   To do away the effect of this evidence, and to shew, that he did not do the acts so charged and proved against him, he offered, and was permitted, to prove, that he had the character of an honest man. The defendant has a right to expect, that some good authority will be produced to sanction the decision of the judge on this point.   *Phillips* and *Swift* lay down a different rule. *Phill. Ev.* 139.   *Swift's Ev.* 140.   Lord *Kenyon* and Lord *Ellenborough* have decided otherwise.   *King* v. *Francis*, 3 *Esp.* 116.   *Bamfield* v. *Massey*, 1 *Campb.* 460.   Evidence should be directed to the *cause*, and not to the *parties*.   *Thompson* v. *Church*, 1 *Root*, 312.   In criminal prosecutions, where the punishment is capital or infamous, evidence of the prisoner's good character may be received, *in favorem vitæ*, to disprove the charge ; but in no other cases, not even in penal actions. *The Attorney General* v. *Bowman*, 2 *Bos. & Pull.* 532. *n.*

6. Because the judge did not instruct the jury, that what is alleged to have been said of the plaintiff as a member of the

*New-Haven,*
*July,*
1820.

Stow
*v.*
Converse.

convention, is not actionable. The defendant stated in his paper, not reproachfully and contumeliously, but as a matter of fact, to which he wished to call the attention of his readers, that the plaintiff, while in the convention, "avowed his opinion, that government had no more right to provide by law for the support of the worship of the Supreme Being, than for the support of the worship of the devil;" in other words, that civil government had no right to make any provisions by law for the worship of God. This opinion, whether correct or not, in the view of the court, is perfectly consistent with the constitution of the state, with the utmost purity of intention, and with the avowed sentiments of a respectable class of pious and exemplary christians. To charge a man with avowing such an opinion, is no more libellous than to call him a *Baptist.*

7. Because the judge instructed the jury, that to deny the being of a God, or any of the persons in the Holy Trinity to be God; to assert that there are more gods than one; or to deny the christian religion to be true, or the Holy Scriptures of the Old and New Testaments to be of divine authority, were crimes punishable by statute; whereas, at the time of the alleged libel, and at the time of the trial, the statute referred to, (*tit.* 66. *c.* 1. *s.* 8.) had been repealed, and the acts specified constituted no offence punishable by statute. If this is true with regard to either of the acts specified, there was a misdirection. By the statute referred to, a person who denies the divinity of the Saviour, or that the scriptures are of divine authority, is rendered incapable of holding any civil or military office. But the constitution declares, that " the exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in this state;" that "no preference shall be given by law to any christian sect or mode of worship;" and that " every elector shall be eligible to any office in this state, except in cases provided for in the constitution," which have no bearing on this subject. *Art.* 1. *s.* 3. 4. *art.* 6. *s.* 4. By these provisions of the constitution, the supreme law, both the *body* and the *penalty* of the statute are taken away; and the legislature have since repealed it in form, on the sole ground of its repugnancy to the constitution.

43

New-Haven,
July,
1820.

Stow
v.
Converse.

*N. Smith* and *R. I. Ingersoll*, contra, contended, 1. That the newspaper containing the debates on the 7th article of the constitution, was proper evidence. It being admitted, that the defendant was present in convention, and reported the debates on that article ; it being also admitted, that the sentiment attributed to the plaintiff, if uttered at all by him, was uttered in debate on that article ; the newspaper containing these debates, taken down, at the time, by the defendant, was admissible to shew, that the defendant must have *known*, at the time of the publication complained of, that it was false, and clearly evinced his *malice* in making it. If the plaintiff *might* have uttered the sentiments attributed to him, notwithstanding the defendant took no notice of them in his report, this is a consideration going to the *weight*, and not to the admisibility, of the evidence ; and the defendant has had the full benefit of it with the jury. It is sufficient for the present purpose, that the evidence in question conduced to prove, that the defendant knew that his publication was false.

2. That the instructions given by the commissioner of the revenue in his circular, was proper evidence to shew, that the plaintiff, in refusing *Middletown* bills, acted under such instructions ; and, therefore, rebutted the idea of his acting *partially*, *unfairly* or *unjustly*. The commissioner of the revenue, having the sole superintendence of the collection of taxes, had a right either to say that nothing but specie should be received, or to designate what kind of paper money might be taken in lieu of specie. 4 *Laws U. S.* 568.

3. That the testimony adduced by the plaintiff, to shew, by his uniform conduct, professions and conversation, from his youth to the publication of the libel, that he was a believer in the christian religion, was admissible ; because it is only in this way, that the opinions of men on religious subjects, can be ascertained. This is, in all respects, distinguishable from the ordinary case of a man's making evidence for himself. In *Curtiss* v. *Strong*, 4 *Day* 51. the opinion of a witness on the subject of the obligation of an oath, was proved, by proving his previous declarations out of court ; and the court said, that this method was the only correct method that could be taken. They added : " We have no other way to learn the opinions and principles of men, respecting any subject, but from their own declarations respecting their opinions and principles."

But if this testimony was not strictly admissible ; yet as it *New-Haven,* was introduced only to rebut testimony of the same kind, intro- *July,* duced by the defendant ; and as the plaintiff disclaimed all *1820.* other benefit from it, and insisted that the whole testimony on both sides ought to be disregarded as irrelevant ; the admis- Stow sion of it furnished no ground for a new trial.  The question *v.* whether the plaintiff was an infidel or not, was not put in is- Converse. sue.    The only questions in issue, as to this part of the case, were, *Did the plaintiff establish an infidel club ?    Did he ut-* *ter the impious sentiment attributed to him in convention ?*    To these points the testimony should have been directed ; and unless these points were established by the defendant, his justification failed.    6 *Bac. Abr.* 251. (*Gwil.* ed.)    *Holt on* *Libels* 283.    The defendant, therefore, has not been injured, by the plaintiff's rebutting his, the defendant's, irrelevant tes- timony.    If there is any ground of complaint, it is on the part of the *plaintiff,* that such evidence was permitted to go to the jury.

4.  That a new trial ought not to be granted for a misdirec- tion relative to the plaintiff's conduct as collector.

In the first place, he had a right to take the  commission of five *per cent.* after he had made personal demand at the dwel- ling of the delinquent, and waited the twenty days.    4 *Laws* *U. S.* 752, 3.    This commission is to compensate the collect- or for making his personal demand  at the dwelling, and taking the other steps preparatory to distraining.    It is not to pay for making distress and sale, because " the necessary and reason- able expenses of  distress and sale" are to be paid, when  the property is sold, over and above the five  *per cent.*    The act of congress on this subject, is similar  to our statute relative to " Rates."    *Tit.* 135. *c.* 1. *s.* 31.    The practice under  our statute has always  been for collectors to take the  *percentage* of delinquents after notice, though a distress and sale may not have been actually made.    Our statute allowing two *per cent.* to sheriffs for collecting executions, supposes a levy on prop- erty to have been previously made ; but the universal and im- memorial practice in this state, sanctioned by  our courts, has been, for the officer to receive his commission, though the money is paid by the debtor to satisfy the execution, and no property is levied on, or sold.

But, secondly, admitting that the plaintiff had not strictly a right to take the commission, still the judge was correct, when

he instructed the jury, that if the plaintiff had *honestly* taken it, he could not be said to be *unfair, partial* or *unjust.* The term *unfair* signifies "not honest," "disingenuous." The term *unjust* signifies "iniquitous." Nor can it be called *extortion*, if honestly taken. Extortion is a criminal act, implying *corruption ;* and in office under oath, it includes *perjury. Com. Dig. tit.* Extortion. In *Massachusetts*, it has been decided, that an officer is not liable to be indicted on the statute for taking greater fees for the service of an execution than are allowed by the fee-bill, unless it be done *wilfully* and *corruptly. Commonwealth* v. *Shed*, 1 *Mass. Rep.* 227.

5. That the evidence as to the plaintiff's general character as an honest man, was properly admitted, because that part of the publication, which speaks of him as collector and bank director, *puts in issue directly* the plaintiff's character as an honest man. The evidence, therefore, comes within the general rule. *Phill. Ev.* 139. *Swift's Ev.* 140. In this state, evidence of general good character is admissible in *all* criminal prosecutions ; and the distinction attempted in *The Attorney-General* v. *Bowman*, has never been recognized here. *Swift's Ev.* 141, 2. If the plaintiff might have given this evidence, in a prosecution against him for extortion, there is no good reason why he may not give the same evidence, to repel the same charge, in this action. In the state of *New-York*, it has been held, that evidence of good character is admissible in actions of *tort*, to repel the charge. *Ruan* v. *Perry*, 3 *Caines' Rep.* 120. 123.

6. That that part of the publication, which attributed to the plaintiff the impious language in the convention, is calculated to expose him to reproach and disgrace, and to render him odious in society ; and is, therefore, libellous. 4 *Bla. Comm.* 150. *Holt on Libels* 73. 221. 223, 4. *McCorkle* v. *Binns*, 5 *Binn.* 340. 349. 350. 352, 3. The constitutional provisions have no bearing upon the subject. It does not efface the characteristics of a libel from the language and sentiments attributed to the plaintiff, that the constitution has made provision for the free and equal enjoyment of religious profession, worship, powers, rights and privileges. There is nothing in the constitution, which denies the right of government to provide by law for the support of the worship of the Supreme Being.

7. That the offences against religion, specified in the charge, were, at the time of the publication in question, crimes punishable by statute.

HOSMER, Ch. J.   In the opinion, which I am now to express, on this case, I shall waive considering the objections made to that part of the charge, which, after mentioning what is understood by being an infidel, declares, that the acts specified " are crimes punishable by statute." Whether there is such a repugnance between the constitution and the law referred to, as necessarily to imply a negative of it, and amount to an implied repeal, I have not had leisure to examine. The result to which I shall come, renders it unnecessary to determine the question ; and for this reason, I shall pass it by, without the expression of an opinion.

In the suggestions, which, at this time, I intend to make, I shall pursue an order different from that which was adopted by the counsel. Those objections to the proceedings below, which I consider as untenable, I shall first attend to, and then recur to others, which, in my judgment, are of a different description.

By way of preliminary, I will state what it is, that constitutes a libel. It is defined by *Hawkins* in his *Pleas of the Crown, book* 1. *ch.* 73. *p.* 193. to be " a malicious defamation, expressed either in printing or writing, and tending either to blacken the memory of the dead, or the reputation of one who is alive, and to expose him to public hatred, contempt or ridicule." On this principle, it has been adjudged, that a writing, which declared, that a person *stunk of brimstone*, and had the *itch*, was libellous ; (*Villers* v. *Monsley*, 2 *Wils.* 403.) because it might be the means of excluding him from society. A letter calling a man a *villain*, is libellous ; and has so been determined. *Bell* v. *Stone*, 1 *Bos. & Pul. Rep.* 331. In *Steele* v. *Southwick*, 9 *Johns. Rep.* 214., which was an action founded on a libel for saying of the plaintiff, " he is no slouch at swearing to an old story," the words were deemed actionable, and for this reason ; that although they did not import *perjury*, in the legal sense, they held the plaintiff up to contempt and ridicule, as being so thoughtless or immoral as to be regardless of the obligations becoming a witness. And a written representation, imputing improper motives to a district attorney, in the performance of his official duty, has been considered a li-

*New-Haven,*
*July,*
*1820.*

Stow
*v.*
Converse.

bel. It is because the imputations are *written,* and may circulate extensively, and never be forgotten, that the law respecting libels is so different as it is from the rules relative to verbal slander.

After reflecting on these principles, I am prepared to give an opinion on the omission of the judge to charge t he jury, that the words spoken in the convention were not actionable. When that body was devising and framing a constitution for the state, it was said of the plaintiff, and after verdict it must be considered as having been said *falsely* and *maliciously,* that " he openly avowed the opinion, that government had no more right to provide by law for the support of the worship of the Supreme Being, than for the support of the worship of the devil." A sentiment so irreverent towards the Creator and Governor of the world, and so analogous to the modes of thinking, habitual to unbelievers and profligate men, would disgrace any person who was not a professed infidel. Taking it for granted, as we are bound to do, on the falsification of this charge, by the jury, that the plaintiff in his tenets is a *christian,* the injury accruing to him from the preceding imputation must necessarily be great. If believed, it can scarcely fail to deprive him of the esteem of mankind, exclude him from intercourse with men of piety and virtue, and render him odious and detestable. The evidence of this need not be laboured ; it is intuitive ; and every man, who has a common share of intellect and reputation, knows, that a charge against him of this description, would awaken all his resentment, and deprive him of peace until he had successfully repelled it.

I shall next consider the objection to the account of the debates in convention, reported by the defendant, and admitted, to show, that the publication of the preceding words was false and malicious.

To the competency of the testimony, proceeding from the pen of the defendant, no objection has been or can be made. It is equally clear, that it was relevant. It stands on the same ground as a verbal representation, made by the defendant, of what occurred in the convention, or of a letter written by him to a friend. In either of these cases, it would conduce to prove the malice and falsity of the publication on this subject, if the defendant was silent relative to the obnoxious expression, which he afterwards thought fit to impute to the plaintiff. I cannot but think, that the deliberate report of

*New-Haven,*
July,
1820.

Stow
*v.*
Converse.

the debates in the convention, by a person, who, it must be presumed, meant to publish them faithfully and completely, is higher evidence that he omitted nothing material, than a mere verbal conversation would be. And when it is consid-ered, that the sentiment said to be expressed by the plaintiff, was, by the defendant, deemed so derogatory to his character, as to be published to the world among other weighty imputations, it is not to be believed, that he would have omitted it in the publication of the debates, had the fact existed. It is true, that the opinion might have been expressed by the plaintiff, when the defendant was not present ; but of this, if there was proof, he might have taken benefit before the jury. In the absence of testimony, it is a fair and reasonable presumption, that the reporter of the conventional debates was present, without intermission, as he ought to have been, to perform the duty he assumed ; and it is no hardship to place on him the burden of showing, that he was absent, at the time when the words published were supposed to have been spoken, and of pointing out the source from whence he derived his information.

The letter of the commissioner of the revenue, to repel the charge of unfairness and partiality in refusing to receive the payment of a tax in *Middletown* bank bills, was duly admitted in evidence. Acting pursuant to instructions derived from the superintendent of the department for the collection of taxes, desicively rebutted the charge made against the plaintiff ; and the objection rests on no higher ground than this ; that when a person is calumniated and rendered odious, he may not adduce the most apposite evidence to show the impartiality and integrity of his conduct.

The uniform profession, conduct and conversation of the plaintiff, from his youth up, was proper testimony to repel the charge of infidelity. The precise point was decided, by the supreme court, in *Curtiss* v. *Strong*, as will appear to any one, who consults the treatise on *Evidence*, by the late Ch. J. *Swift*, *p.* 48. The propriety of the evidence is too obvious to be questioned. It is the best proof the nature of the case admits of. From the life and conversation of a man, viewed conjointly, men in private life form an opinion of his character ; and courts and jurors must form their opinion in the same manner. True it is, a man may display the hypocrite ; and he may, and often does it, more successfully, by his actions, than

*New-Haven,*
*July,*
*1820.*

Stow
*v.*
Converse.

by his words. But it is not thence to be inferred, that his actions are no evidence in his favour, when the enquiry is as to the regularity and piety of his life. The conversation of a man, for successive years, on the enquiries concerning his faith, and the operations of his heart, is *fact;* it is part of the *res gesta;* and by the fire-side every man has recurrence to it, to ascertain the integrity of his fellow men, whether the conversation is for him or against him. The same recurrence, and for the same reason, must be had in a court of justice, or we must reject both *actions* and *words,* when we are in search after *character.* If the words and actions harmonise, they form a united whole; and every man who exhibits a good conversation out of his lips, as well as a fair example in his life, is entitled to the benefit of both, at all times, and in all places.

But if the observations made, are unfounded, the testimony was admitted merely to rebut evidence of the plaintiff's infidelity, which was never a point *in issue* between the parties. If this is correct, the defendant has no cause of complaint, as the plaintiff's evidence alone destroyed testimony on his, the defendant's, part, which should never have been heard.

To decide what matters were in issue, we must first ascertain what were the false and calumnious charges of which the plaintiff complained.

The defendant charged on the plaintiff the following misconduct; that " he seduced his early companions to join an infidel club, by him and others set up and supported;" that " he had attempted to destroy all the religious institutions of the state;" and that " he had insulted the clergy, who had offered their services in the parish where he resided." Now, suppose the defendant had pleaded a special justification, and it cannot be denied, that in his proof he is held to the same rules as if the plea had been made, what would have been his plea? That the plaintiff was an infidel? No; it would not have met a single assertion the defendant had made. Every person will perceive, that the plaintiff must have been an infidel, if the facts stated were true; but infidelity was not directly *charged* on him. It was something worse than infidelity itself. It was the charge, not of *want of faith,* but of *bad practice;* not of *opinion,* but of *conduct.* A man may, in his opinions, be an infidel, and, for the most part, may keep them to himself, or, he may converse freely, in all companies, and avow his tenets; or, with a zeal worthy of a better cause, he may

establish infidel clubs, and seduce the young and unwary to become members of them.    To be called an infidel, is highly reproachful ; but it is worse to be charged with free and open conversation, in support of infidel principles ; and worst of all, to be represented as making efforts, by schools, and other institutions, to propagate irreligious tenets.    Now, he who makes the latter charge, can only justify, by proof co-extensive with it ; and it is of no avail, when he has imputed to a person *bad conduct*, to offer proof of *incorrect principles*. I am clear, then, that the infidelity of the plaintiff ought never to have been a question at the trial of this cause ; and that no complaint can legally arise from having, in any manner, de-feated the evidence of the defendant on this point.    *Hilsden* v. *Mercer, Cro. Jac.* 677.    *Smithies* v. *Harrison*, 1 Ld. *Raym.* 727.    *Bull. N. P.* 9.    *Andrews* v. *Vanduzer*, 11 *Johns. Rep.* 38.

There remains to be considered two objections, the order of which I shall invert.    To rebut the proof introduced on the part of the defendant, adduced to establish the truth of his charges against the plaintiff's conduct as collector of the revenue, and bank director, evidence was admitted on the part of the plaintiff, to show that he had ever sustained the character of an honest man.    The matter in issue here was *conduct*, not *character*.    The charge on the plaintiff was that of having exacted money in violation of his official duty ; and to this point alone should the testimony have been received. There is no pretext for the assertion, that such evidence was ever before admitted.    The decisions in *Westminster-Hall*, in the neighbouring states, and in our own state, all harmon-ize on this subject.    " In ordinary cases, where the defen-dant's character is not called in question, otherwise than by charging him with fraud, or misconduct, it is not admissible to produce any proof to support or impeach his character." *Swift's Ev.* 140.    And as the plaintiff derives no support from adjudged cases, as little is derivable from principle.    It is not only in contravention of the fundamental rule, that evidence shall be confined to the issue, to admit such testimony ; but it would be infinitely dangerous to the administration of justice. Instead of meeting a charge of misconduct, by testimony evin-cive of not having misconducted, general character would be-come the principal evidence in most cases ; and he who could throng the court with witnesses to establish his reputation in

*New-Haven,*
*July,*
*1820.*

Stow
*v.*
Converse.

general, would shelter himself from the wrongs he had perpetrated. In *criminal* cases, by way of *exception*, the prisoner is permitted to adduce his general character, in opposition to a specific charge. But the rule has not been, and ought not to be, extended further.

Had the plaintiff offered general character in evidence, on the points on which the charges were made against him, the long practice of our courts would have sanctioned the admission of such testimony to enhance damages ; but it would not have been received for any other purpose.

The plaintiff received five *per cent.* commissions, in instances where there had been no actual distress and sale ; and that he had legal authority for this, the counsel have contended. I have critically examined the 26th section of the act referred to, on which this question depends, and am satisfied, that the law did not authorize the commissions collected. After having designated the mode of proceeding against the property of a person, who has omitted to pay his tax, the act provides, that in case of distress, the goods distrained shall be restored to the owner, prior to the sale, on payment or tender of the full amount demanded, with the levying fee, and reasonable expenses for the custody. Even at this period, after distress, no commissions are payable. But if the property is *sold,* then five *per cent.* is allowed to the officer, charged with the collection of the tax, for his own use. The assertion of the judge was correct, when he declared, " that the collector was entitled to a commission on those taxes, only in case of an actual distress and sale."

It only remains to consider, whether the residue of the charge on this point, *viz.* that " if the plaintiff had honestly taken the commission by mistake, he could not be said to be unfair, partial, or unjust," is legally correct.

The mistake alluded to, was a supposed misconstruction o the law. The charge made against the plaintiff was that of *unfairness* and *partiality* in exacting a greater sum than the law authorized. On this subject, in my judgment, the opinion of the judge was incorrect. Had there been a common usage, sanctioned by courts of justice, allowing the commissions in the case alluded to, the decision by *Sewall,* J. in *Commonwealth* v. *Shed,* 1 *Mass. Rep.* 229. would have given it countenance. For, in that case, although the officer took fees beyond those allowed by statute, it was agreed, by the

counsel, on both sides, that the usage in the county had been uniform in taxing the sum complained of, in favour of officers. Here nothing of that nature is pretended; and the jury have been permitted to enquire, whether the law had not been misconceived, without any testimony before them directed to that object.

The general principle, that ignorance of law is no excuse, for aught that I can discern, applies to this case, with its full force. It is a maxim founded in sound policy and general convenience; and seems to be essentially necessary to be adhered to. If the prisoner prosecuted for a crime might allege his ignorance of law, it would strike at the foundation of the criminal code, and render the community unsafe. The same may be said as to wrongs done towards an individual, and to contracts made with him. If, in either case, he could allege his ignorance of the law, he might evade his contracts, and commit wrongs, with impunity. *Gomery* v. *Bond,* 3 *Mau.* & *Selw.* 378. *Bilbie* v. *Lumley,* 2 *East,* 469. *Brisbane* v. *Dacres,* 5 *Taun.* 143. *Lowry* v. *Bourdieu, Doug.* 468. It may sometimes happen, that this maxim of law, like other general principles, will produce disadvantage, unjustly, to an individual. But this is the condition on which all general rules are adopted. Partial inconvenience is the invariable consequence; but the predominance of general good, notwithstanding, authorizes their being established. An officer may very honestly take illegal fees, through ignorance of law; but if this were to be an admitted enquiry, it would be endless, and dangerous in the extreme. If the rule were to be mitigated or varied, one would think it ought to be, when a person is prosecuted criminally, for something which involves the severest consequences. But in that case, it could not be done; nor in my judgment, can it in this. I am of opinion, that the plaintiff was estopped from resorting to the permitted enquiry; and if, through ignorance of law, he took illegal fees, that he cannot justify himself in the manner which the judge permitted.

The other Judges were of the same opinion.

New trial to be granted.