Riley v. Lee, &c.

CASE 94—PETITION ORDINARY—MAY 25.

# Riley v. Lee, &c.

APPEAL FROM OWEN CIRCUIT COURT.

1. LIBEL.—Any written or printed publication which tends to degrade or disgrace the person about whom it is written or printed, or which tends to render him odious, ridiculous or contemptible in the estimation of his friends or acquaintances or the public, is libelous. Therefore, it is libelous to publish any writing or printing of a person that he is guilty of a falsehood.

It is held in this case that a card published in a newspaper, charging, in substance, that the plaintiff, for the purpose of aiding his sister to procure the situation of teacher in a district school as against another applicant, had uttered a falsehood, was libelous.

2. SAME—PRESUMPTION OF MALICE.—Malice in such a case consists in intentionally publishing, without justifiable cause, any written or printed matter injurious to the character of another; and everything written and published of another that is injurious to his character must, for the purposes of the action, be taken to be false unless it is shown by plea and proof to be true. And the presumption of malice remains through the entire case until it is met by plea and proof of a contrary nature, or that the publication was justifiable.

3 PUBLICATION OF LIBELOUS ADVERTISEMENT.—The publisher of a newspaper is liable for the publication of a libelous advertisement, although in the form of a card written by another over his own signature, the publication being the gravamen of the action.

4. FREEDOM OF THE PRESS.—The provisions of the Federal and the State Constitution guaranteeing the "freedom of the press," were simply intended to secure to the conductors of the press the same rights and immunities that are enjoyed by the public at large; and, therefore, the right of "the press" in criticising the acts of either public officials or private individuals is no greater than the right of the citizen in that regard.

J. J. LANDRAM FOR APPELLANT.

1. The publication complained of is a libel and therefore actionable. (Odgers on Libel and Slander, 20, 22, 23, 24, 25; Duncan v. Brown, 15 B. M., 192; Shelton v. Nance, 7 B. M., 128; Starkie on Slander,

Riley v. Lee, &c.

chap. 5, page 147; Hilliard on Torts, 237; Cooley on Torts, 206, 195, 220; Chitty's Pleading, 632; Starkie on Slander, 202, 413; Townshend on Slander and Libel, sec. 45, note 3.)

2. The words published in this case were actionable *per se*, and proof of' general damage is admissible upon the trial of the case. (Odgers on Slander and Libel, 313.)

EVAN E. SETTLE FOR APPELLEE.

1. The publication complained of is not *per se* libelous for the reason that the charges of ungentlemanly conduct, etc., are made by A. E. Threlkeld on the premises laid down stating the misrepresentation, and these premises do not sustain his conclusions.

2. No special damage is alleged, the allegations not being sufficiently specific.

3. Where the proprietor of a newspaper inserts in his paper matter not of' his own composition, but signed and vouched for by a stranger, it would seem that the doctrine of implied malice does not apply, and that the injured party should be remitted to his action against the author, unless it is averred that the publisher of the newspaper was in some way connected with the writing of the article, or that he procured its publication

LINDSAY & BOTTS ON SAME SIDE.

The demurrer to appellant's petition was properly sustained for the following reasons:

1. The appellees were summoned as individuals to answer the petition of appellant, and not as partners and publishers of the Owen News. (Townshend on Slander, 2d Ed., sec. 308, page 501; Folkard's Starkie on Slander, sec. 402, page 444; Cook v. Batchelor, 3 B. & P., 150; 2 East, 426; Brothwick on Libel, 174; LeFaun v. Malcolmsen, 1 Ho. of Lds. Cas., 637; 13 Law Times, 61; Foster v. Lawson, 3 Bing., 452; 11 Moore, 360; Haythorn v. Lawson, 3 Car. & P., 196; Pechell v. Watson, 8 M. & W., 391; 3 Wm. Sand., 117, 6th Ed.; Society of Solictors v. Robertson, Mor. 13, 935; Sherlock v. Beardsworth, 2 Min. Rep., 19; Smith v. Croker, Cro. Car., 512; 28 H., 8 fol. 19; Dyer v. Shipp, 53 Devens Case.)

2. A joint action can not be maintained by appellant against the appellees, if sued as individuals and not as partners and publishers of the Owen News. (Townshend on Slander and Libel, sec. 119, page· 153; Chitty on Pleadings, vol. 1, page 98; Thomas v. Ramsey, 6· Johns., 26; 17 Mass. Rep., 186; Webb v. Cecil & Vaughn, 9 B. M.,. 198.)

3. The petition does not allege that the injuries complained of, and· the damages sought to be recovered, have not been satisfied. (Towns--

hend on Slander, secs. 119, 250 and 251; Boosey v. Wood, 3 Hurl. & Col., 484; Lain v. Applegate, 1 Starkie, 97; Yardren v. Brook, 2 Nev. & M., 835; O'Kessin v. Barclay, 2 Pa. St. R., 531; Morley v. Newfain Township, 8 Barb., 653; King v. Warring, 5 Esp., 13; Eiffe v. Jacobs, 1 Jebb. & S., 257; 2 Greenleaf on Evidence, 321; Campbell v. Butts, 3 N. Y., 173; Hitchew v. Campbell, 2 W. Bl. R., 827; Thomas v. Ramsey, 6 Johns., 26; Brown v. Hirly, 5 Q. B. U. C., O. S., 734; Webb v. Cecil, 9 B. Mon., 198.)

4. The petition does not allege that the paper wherein and whereon the alleged defamatory matter was printed was ever issued from the press, or was ever delivered to, or came into the possession of, or was read by any person whomsoever, or that by any acts or act of the appellees, or either of them, said paper was so placed purposely or carelessly that its contents could have been, or might have been, read by any one, or that the paper was ever at any time out of the possession of the appellees, or either of them, or that the appellees, or either of them, ceased to have or to exercise absolute control of same. (Townshend on Slander, secs. 101 and 108; Folkard's Starkie Com., 27; 2 Starkie on Libel, 13 and 14; 1 W. Samuel, 132, note 2; Phillips v. Jansen, 2 Esp. Cas., 226; Hicks Case, Hob., 215; Rex v. Wigener, 2 Starkie Cas., 245; Fora v. Warren, 15 C. B. N. S., 806; Edwards v. Wooten, 12 Rep., 35; Clutterback v. Chaffers, 1 Starkie Rep., 471; Day v. Bream, 2 Moo. & Rob., 54; Holroyd, J., Rex v. Burdett, 4 B. & Ald., 143; Taylor v. Shurgingger, 2 Rep. Con. Ct., 367; Phila., &c., R. R. v. Quigley, 21 Heind, 202; McIntosh v. Mattingly, 9 B. M., 100; Hanning v. Bassett, 12 Bush, 362.)

5. The author's name was, by the appellees, given at the time and place of the alleged publication. (Trabue v. Mays, 3 Dana, 138; Robinson v. Harvey, 5 Mon., 519; Parker v. McQueen, 8 B. M., 18; 12 Rep., 132; Mon., 821; Crawford v. Mederlite, 1 Lev., 82; Davis v. Lewis, 7 T. R., 17; Churd v. Bridgman, 6 Missouri, 190; Woolwoth v. Meadow, 5 East, 463; Haynes v. Leland, 29 Maine, 233; Abrahams v. Smith, 8 Blackf., 95; Jones v. Chapman, 5 Blackf., 88; Crain v. Douglass, 2 Blackf., 85; Cumminford v. McAvoy, 15 Ill., 311; Johnson v. Lance, 7 Iredell, 448; Kelley v. Dillon, 5 Ind., Porter, 426; Townshend on Slander, note to page 326; Scott v. Peebles, 10 Min., 546; Larkins v. Tartar, 3 Sneed, Tenn., 681; Jones v. Clark, 1 Cid., N. C., 397; Beuschoten v. Yaple, 13 Hen. Pr. N. Y., 97; Starkie on Slander and Libel, see note 277.)

6. The defamatory words, as alleged in appellant's petition, are not "*per se*" libelous, therefore special damage *must* be, but is not averred. (Townshend, 345, 245; Starkie, 478 and 485; Squier v. Gould, 14 Wend., 159; Strange v. Hitchew, 12 Ind., 64; Roberts v. Roberts, 5 B. & S., 385; Kelly v. Huffington, 3 Cr. C. C., 81; Birch v. Benton, 26 Miss., 5 Jones, 155; Johnson v. Robertson, 8 Porter,

486; Barnes v. Trundy, 31 Maine, 1 Red., 321; Bostwick v. Nicholson, Kirby, 65; Bostwick v. Hawley, *Ib.*, 290: Shipman v. Burrows, 1 Hall, 399; Harcourt v. Harrison, *Ib.*, 474; Geare v. Britton, Bull N. P., 7; Wilson v. Runyan, Wright, 651; Capel *et al.* v. Jones, 4 C. B., 259; Rawlings *et ux.* v. Norbury, 1 F. & F., 341; Foulger v. Newcomb, 36 L. J. Ex., 169, and 2 L. R. Ex., 327; Robbins v. Treadway, 2 J. J. M., 541; Hart v. Reed, 1 B. M., 168; Duncan v. Brown, 15 B. M., 193; Hume v. Arrasmith, 1 Bibb, 166; Logan v. Steele, 1 Bibb, 593; Jones v. McDowell, 4 Bibb, 189; Barr v. Ganes, 3 Dana, 258; McNamara v. Shannon, 8 Bush, 558; Russell v. Wilson, 7 B. M., 261; Walton v. Yancy, 5 Mon., 155; Mills v. Wimp, 10 B. M., 417; Wiley v. Campbell, 5 Mon., 396; Mills v. Taylor, 3 Bibb, 469; Jackson v. Weisiger, 2 B. M., 215; Morris v. Barclay, 1 Litt., 64; Phillips v. Wiley, 2 Litt., 153; Elliott v. Ailsberry, 2 Bibb, 473; Williams v. Greenwood, 3 Dana, 433; Walton v. Grant, Sneed, 68; Clay v. Barclay, Sneed, 67; Porter v. Hughey, 2 Bibb; Harris v. Smith, 4 B. M. 386; Brown v. Perrin, 6 Bush, 518; Jones v. McDowell, 4 Bibb, 188; Gill vs. Bright, 6 Mon., 131; Watson v. Hampton, 2 Bibb, 319; Martin v. Milton, 4 Bibb, 99; Gibbs v. Tucker, 2 Marshall, 220; Ramsey v. Thornberry, 7 B. M., 475; Beswick v. Chapel, 8 B. M., 486; Burkett v. McCarty, 10 Bush, 759; Caldwell v. Abbey, How., 530; Brite v. Gill, 2 Mon., 66; Barton v. Wharton, Ky. Law Journal. vol. 1, page 341.)

7. The amended petition does not allege special damages, nor that the words complained of were spoken of and concerning plaintiff in reference to his profession or business. (Townshend on Slander and Libel, pages 97 and 298; Folkard's Starkie on Slander and Libel, margin pages 35 and 36, note; 1 Mence on Libel, 333; Sedgwick on Measure of Damages, page 652; Covington Street Railway Co. v. Parker, 9 Bush, 459; Trimble v. Spiller, 7 Mon., 395; Tervilliger v. Wands, 17 N. Y., 54; Wilson v. Gout, 17 N. Y., 442; Alsop v. Alsop, 5 Hurl & Nor., 534; Bedell v. Powell, 13 Barb., 183; Townshend on Slander and Libel, page 80 and note; Townshend on Slander and Libel, pages 81 and 616 and note; Podwick v. Wittcomb, 15 Jar., 778; 5 Eng. Law and Eq. Rep., 487; French v. Mil., 22 Ohio Rep., 50; Douglass v. Tinsey, 2 Wend., 354; Shipman v. Burrows, 1 Hall, 399; Sterry v. Foreman, 2 C. & P., 592; Tilk v. Parsons, 2 C. & P., 201; Barnett v. Allen, 1 Fost. & F., 126; King v. Watts, 8 C. & P., 614; Folkard's Starkie on Slander and Libel, sec. 450, page 484; Wilson v. Runyan, Wright, Ohio, 651; Bassett v. Elmore, 48 Barb., N. Y., 561; Hollins v. Muzzy, 30 Vt., 365; Cook v. Cook, 100 Mass., 194; Townshend on Slander, sec. 190, page 269; Folkard's Starkie on Slander and Libel, sec. 439; Robbins v. Treadway, 2 J. J. M., 541.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant's petition and amended petition charge the appellees, as the owners and publishers of a newspaper known as the Owenton News, in Owen county, Ky., with having maliciously procured and published, for the purpose of defaming, degrading, and holding up to contempt and ridicule the appellant, a writing which was false, and known by them to be false, as follows:

"Whereas, O. V. Riley did make representations to me that it would be impossible for my sister, Bettie Threlkeld, to secure the position of teacher of the school in the Cedar Hill district, when, at the very time that he made this assertion, a *bona fide* contract with the trustees of said school had been made, in which she was positively engaged to teach said school; and, whereas, the disappointment occasioned by this misrepresentation of his, caused my sister's mind to be sorely troubled during her late illness, causing her to despair, and assisting the ravages of disease to undermine her constitution, and further considering the fact that his sister had applied for the same school, I regard this conduct in him as uncalled for, ungentlemanly and detestable as his statement was fallacious. (Signed,)    A. E. THRELKELD, M. D."

The lower court sustained demurrer to the petition and amended petition, setting up the foregoing matters. From this ruling the appellant has appealed.

The sole question to be determined is, are the matters charged in the petition and amended petition libelous?

There is a material difference between slander and libel. Many things are actionable when written or printed and

published that are not actionable if spoken, as the following cases show :

In Clement v. Chivis, 9 B. & C., 172, it is said : "There is a marked distinction in the books between oral and written slander. The latter is premeditated and shows design; it is more permanent and calculated to do a much greater injury than slander merely spoken."

In McClurg v. Ross, 5 Binney, 218, it is said : "Words are often spoken in heat, in haste, and with very little reflection or ill intention, and frequently forgotten or repented of as soon as spoken. But writing requires deliberation, and is, therefore, more injurious to the character attacked. We are apt to suppose that before a man reduces an accusation to writing he has satisfied himself of the truth of it, and if he has not satisfied himself his conduct is certainly very reprehensible. Besides, the scandal is more permanent and widely diffused. So that whether we consider the injury itself or the mind of the person by whom the injury is committed, a libel is entitled to less allowance than a slander by words."

In Stow v. Converse, 3 Conn., 325, 342, it is said : "It is because the imputations are written, and may circulate extensively and never be forgotten, that the law respecting libel is so different as it is from the rules relative to verbal slander."

In view of the fact that newspapers, as the chroniclers of current events, public measures, and the acts of public men, are circulated everywhere, and read by all classes as seekers of such information, and which the publishers and editors endeavor to impress upon such readers, are true, and which are false, but seldom rejected as absolutely

false, but generally received as probably true, or as containing at least some truth; and as these papers are preserved for years and years, and whose attacks upon personal character may be reproduced at any time to wreck honorable old age or be thrown in the teeth of his descendants in order to gratify personal spite or to subserve partisan ends, the reason for the distinction between libel and slander, in reference to newspapers, is intensified.

The following cases illustrate the rule for libel as distinguished from the rule for slanderous words spoken:

Cooper v. Tilney, 3 Salk., 225: "Scandalous matter is not necessary to make a libel; it is enough if the defendant induce an ill opinion of the plaintiff, or make him contemptible and ridiculous."

Villers v. Monsley, 2 Wilson, 403: To publish a "writing of another which tends to hinder mankind from associating or having intercourse with him" is libelous.

Woodard v. Dawsing, 2 Man. & R., 74: "That which tends to disgrace," if written and published, is a libel.

Forbes v. King, 1 Dowling, 672: "Undoubtedly, to write of a man what will degrade him in society is actionable."

Parmiter v. Coupland, 6 M. & W., 105: "A publication in writing, without lawful excuse, which is calculated to injure the reputation of another, by exposing him to hatred, contempt or ridicule, is libelous."

Dexter v. Speer, 4 Mason, 115, Judge Story: "Any publication, the tendency of which is to degrade or injure another person, or bring him into hatred, ridicule or contempt, is libelous."

Nunn v. Winters, 2 Humphrey, 513: "Any writing or

printing tending to injure the character of an individual, or diminish his reputation, is a libel."

Colby v. Reynolds, 6 Vt., 489: "Any written publication concerning another that tends to render his situation in society uncomfortable and irksome, or tends to impair his standing in society as a man of rectitude and principle, or unfit for the society and intercourse of honorable and honest men, is libelous."

Rice v. Simmons, 2 Har. (Del.), 417: "A published writing which tends to disgrace a man or lower him in or exclude him from society is actionable."

In accordance with these cases is the case, decided by this court, of McGee v. Wilson, Littell's Selected Cases, 187, which declares: "It does not follow that the libel is not actionable because words of a similar import, when spoken, are not so; for the rule with respect to written slander is different from that which prevails when it is only verbal. Words, to be actionable *per se*, when spoken of a person not in any office, trade or profession, must imply the imputation of an offense which would subject him to punishment; but words, when written, if they tend to degrade or disgrace, or to render odious or ridiculous the person of whom they are written, will be libelous and consequently actionable."

So it may be regarded as thoroughly settled, that if the written or printed publication tends to degrade the person about whom it is written or printed—that is, if it tends to reduce his character or reputation in the estimation of his friends or acquaintances or the public, from a higher to a lower grade, or if it tends to disgrace him—that is, if it tends to deprive him of the favor and esteem of his

friends or acquaintances or the public, or tends to render him odious, ridiculous or contemptible in the estimation of his friends or acquaintances or the public, it is, *per se*, actionable libel.

Accordingly, to publish any writing or printing of a person that he is guilty of falsehood, is libelous. Cooper v. Stone, 24 Wendell, 434-41. Also, this court held in the case of Shelton v. Nance, 7 B. M., 129, that the following language, written in a church book: "A report raised and circulated by William Shelton against brother Nance, stating that he (Nance) made him (Shelton) pay a note twice, and proved by said Shelton to be false," was libelous. In this case, as well as in the Cooper case, *supra*, the only charge against the party was that of having written a falsehood in reference to another, which was held, if untrue, to be libelous.

Truth is not only enjoined by the divine law, but the amity, happiness and welfare of society are hinged upon it; and no man can or ought to enjoy a reputation as that of an honest and honorable man, unless he speaks the truth on all occasions. Falsehood is degrading; it ought to degrade the man that tells it, and leave him a mere hulk stranded on the outskirts of society; and to charge him with it certainly tends to degrade him.

In this case the substance of the card is, that the appellant, for the purpose of aiding his sister to procure the situation of teacher in the Cedar Hill district school—Miss Bettie Threlkeld being an applicant for the same position—uttered a falsehood in the interest of his sister, which card, according to the principles just discussed, is clearly libelous *per se*.

It is charged that this card was maliciously published, etc. Malice, in a case of this kind, consists in intentionally publishing, without justifiable cause, any written or printed matter which is injurious to the character of another; and everything written and published of another that is injurious to his character must, for the purposes of the action, be taken to be false until it is shown by plea and proof to be true; and the presumption of malice remains through the entire case until it is met by plea and proof of a contrary motive, or that the publication was justifiable.

The fact that the card was written by a person other than the appellees does not exonerate them from liability, for it is the publication that is the gravamen of the action. Nor can the appellees shelter, in a case like this, behind the "freedom of the press." By the provisions of the United States and State constitutions guaranteeing the " freedom of the press," it was simply intended to secure to the conductors of the press the same rights and immunities that are enjoyed by the public at large. The citizen has the right to speak the truth in reference to the acts of government, public officials or individuals. The press is guaranteed the same right, but no greater right. The citizen has the right to criticise the acts of government, provided it is with the good motive of correcting what he believes to be existing evils or defects and of bringing about a more efficient or honest administration of government. For like purpose and with like motive he may criticise the acts of public officials, and for the honest purpose of better subserving the public interest he may criticise the fitness and qualifications of candidates for office, not only in respect to their ability, fidelity and experience, but in

respect to their honesty and personal habits.  The press has precisely the same rights, but no more.  An individual may, in what he honestly believes to be in the interest of good morals and good order and the suppression of immorality and disorder, criticise the acts of other individuals.  So may the press.  But in no case has the citizen the right to injure the rights of others—among the most sacred of which is the right to good name and fame—their rights are as absolute as his, and neither can injure the rights of the other.  This negation extends to the denial of the citizen's right to speak, write or print that which tends to injure the character or reputation of another unless it is in fact true.  The press is under the same restraints.  As said, the gravamen of libel consists in its publication.  If it be said the conductors of newspapers may publish, as an advertisement, what has been written by others, the answer is that the conductors of the paper are presumed to know that the writing is an attack upon the character and reputation of another, which no one has the right to make unless the truth of the charge actually exists, and its publication in the newspaper not only gives the charge a more extended circulation but gives it a permanent lodgment in the memory of the living, and it may be reproduced when all else concerning the person has been forgotten.  Continuing the parallel: If the citizen, for wages, should proclaim and read a libelous writing from the street corners, would the fact that he merely did it as a matter of business protect him ?  The answer is, no ; for the reason that the good name of a citizen is too sacred to be let out on contract.  So the answer to the conduct-

ors of the paper is, that the advertisement proclaimed the defamation of a person's character, which, unless true, is not a subject of lawful advertisement, consequently they must answer in damages. Also, in reference to publishing such writing, without malice, as a matter of news, for the same reasons the answer comes back that it is not lawful to bruit, thither and yon, defamation of a person's character merely to gratify a morbid appetite for such scandal; that nothing short of the truth of the matter published will be heard in justification of the unwarranted liberties thus taken with a person's good name.

But it is said that it would be a harsh rule to require conductors of newspapers to be responsible for the truth of the information that they furnish the public. The answer is, that the press must not be the vehicle of attacks upon the character and reputation of a person unless the attack is known to be true; if it is not known to be true, do not publish it; the publication can seldom, if ever, do good, and the indulgence in publications of the sort, not strictly true, would soon deprave the moral taste of society and render it miserable.

The judgment sustaining the demurrer to the petition and amended petition is reversed and the case is remanded, with directions to overrule the same, and for further proceedings consistent with this opinion.