## G. T. MITCHELL v. A. J. SPRADLEY ET AL.

### Decided March 10, 1900.

**1. Libel and Slander—Language Libelous Per Se—Charge of Court.**

A candidate for office wrote and had published a letter advising the people to watch two named supporters of his opponent, and declaring that when these supporters approached voters and found that he (the writer) was in the lead, one of them would ask the other to "send after Dr. M., as he (M.) is the biggest liar in beat 6, and can study up something to down him." Held, that the language was libelous per se, and the court erred in submitting to the jury the question of what was intended by it.

**2. Same—Evidence of Intention Not Admissible.**

It was error for the court to permit the defendant (writer of the letter) to testify that he did not mean to charge that M. was a liar, but that another person would say in an imaginary conversation that M. was a liar.

**3. Same—General Reputation.**

It was error to permit the defendant, who had pleaded the truth of the charge in justification, and who had testified that the plaintiff M.'s general reputation for truth and veracity was bad, to further state in answer to questions from his own attorney that he had conversed with certain of M.'s neighbors, and that they had said to him that M.'s reputation was bad.

APPEAL from Nacogdoches. Tried below before Hon. TOM C. DAVIS.

*Blount & Garrison,* for appellant.

*Dial & Chestnutt,* for appellees.

GILL, ASSOCIATE JUSTICE.—This was a suit by appellant, G. T. Mitchell, against J. L. Miller, A. J. Spradley, and A. F. Henning, for damages because of the writing by Miller and the publication by Spradley and Henning of an article concerning him alleged to be libelous.

Appellees answered by general denial, and also pleaded the truth of the charge in justification. Trial by jury resulted in a verdict and judgment for defendants, from which this appeal is prosecuted.

The alleged libelous article upon which action is based was shown to have been written by J. T. Miller and sent to A. J. Spradley and A. F. Henning, who published it in the Nacogdoches Plaindealer, a newspaper of which they were proprietors. This paper was published in Nacogdoches County, and had a considerable circulation in that and adjoining counties.

The article in question is quite lengthy, and was in the form of an open letter to H. K. Polk. As printed in the newspaper it was headed, "Two Liars Called Down."

It was a scathing and vituperative attack upon H. K. Polk, to whom it was ostensibly addressed, and upon one H. Harris, in which they are denounced as liars and specifically charged with lying. The writer also takes occasion to charge others with lying. To set the article out here in full would serve no useful purpose. Its general nature is thus re-

ferred to as indicating the spirit in which it was written and as bearing upon the construction to be placed upon the part referring to appellant, and of which he particularly complains. That portion of the article is as follows:

"In conclusion I will say to the people of beat 2 and 6, watch Harry as he walks up to the darkies and asks them how is Joe Miller and his Uncle Tye running, and the darkies tell him that his Uncle Tye is not known in the race. You will see him slip off with head and tail both down, and Henry meets him around the corner and says, 'Joe has got us there.' Harry will tell him to send after Dr. Mitchell, as he (Dr. Mitchell) is the biggest liar in beat 6. He can study up something to down him." It was alleged and shown that by Dr. Mitchell was meant J. T. Mitchell, the appellant.

Other parts of the article indicate that it was written for perusal by the people of those subdivisions of the county known as "beat 2" and "beat 6," and was intended to have some bearing on the race for county commissioner. It was signed by Joe T. Miller, one of the appellees. It appears that appellant was a private citizen, and not an aspirant for any office.

Appellant complains that the trial court erred in submitting to the jury the issue whether Miller, by the use of the alleged libelous words, intended and meant to charge that Mitchell was the biggest liar "in beat 6," or intended such language to be so understood by others, and that same was so understood by the readers, and in making plaintiff's right to recover dependent upon the establishment by him of such intention.

This charge was clearly erroneous. The language complained of is libelous per se, and actionable without any other proof save its publication by defendants. Whether Miller intended to say that appellant was a notorious liar, or placed that language in the mouth of another in an imaginary conversation, can make no difference in the result. The import of the language is plain and can have but one signification. In such a case it is not only the duty of the trial court to charge that the language, if established and shown to have been published, is actionable per se, but he may charge that the law presumes it to be false until the contrary is shown by defendants. In Ledgerwood v. Elliott, 51 Southwestern Reporter, 872, it is said, "the words being actionable per se, the intent with which they are uttered does not determine the right to recover." See also Cooley on Torts, 205.

In Belo v. Smith, 91 Texas, 224, it is said: "The question is, what effect would the language have on the mind of the ordinary reader? What construction would he have put upon it? For in defamatory language it is not so much what the speaker or writer intends to convey as what he does in fact convey. It is the effect upon the character * * * which the law considers, and therefore the writer uses the language at his peril." See also King v. Sassaman, 54 S. W. Rep., 304, and authorities cited. When the publication admits of no just interpretation except one which is injurious, its meaning is to be determined

by the court.   Cotulla v. Kerr, 74 Texas, 94; Townsh., Slan. and Lib., sec. 286.

The language complained of clearly tends to bring the appellant into ridicule and contempt, and having been written, printed, and published, comes within the strict definition of a libel per se.   Odgers, Lib. and Slan., 2.

Every man is presumed to know and intend the natural and ordinary consequences of his acts, and this presumption is not rebutted by proof merely that at the time he uttered or published the words the defendant did not intend their natural consequences, or hoped or expected that these consequences would not follow.   Zeliff v. Jennings, 61 Texas, 458; Odgers, Lib. and Slan., 4.   Nor will an honest belief in the truth of the charge amount to a justification, but defendants may prove, in mitigation of damages, facts showing a ground of suspicion not amounting to actual proof, or which tends to prove the truth yet falls short.  Patten v. Belo, 79 Texas, 46.   We think the assignment should be sustained.

It is also urged that the court erred in permitting the defendant to testify that he did not mean to charge that Mitchell was a liar, but he meant to say that Henry Polk would say in an imaginary conversation that Mitchell was a liar.   This evidence should have been excluded, because bearing upon no issue in the case and furnishing neither justification nor mitigation of the act complained of.

After the plaintiff has shown that defendants published and circulated the paper containing the language complained of, the only defense available in bar of the judgment is proof of the truth of the charge.   The law indulges the presumption that it is false, but this presumption may be overthrown by proper proof.   Malice is also implied from the character of the language used.   13 Am. and Eng. Enc. of Law, 426.   "The law does not impute malice not existing in fact, but presumes a malicious motive for making a charge which is both false and injurious."   In such case it is unnecessary for plaintiff to introduce any evidence from which malice may be inferred, other than the libelous article.   Id., 427, and authorities cited.

By the sixth assignment of error appellant complains of the action of the trial court in permitting the witness Miller, after stating in support of his plea of truth of the charge that appellant's reputation for truth and veracity was bad, to state that he had conversed with certain of appellant's neighbors and that they had stated to him that his reputation was bad.   The admission of this evidence was in contravention of a familiar and well established rule of evidence.   The parties named, if called as witnesses, would not have been permitted to state their individual opinions until they had qualified to speak as to the general reputation of appellant, and would have been confined in their answers to a statement as to what that reputation was.   Yet this witness appears to have been permitted, in answer to questions from his own attorneys, to detail the alleged unsworn statements of others.   The vice in this

ruling by the trial court is well illustrated by the presence of affidavits from these same parties, attached to the motion for a new trial, in which they deny having made any such statements to Miller. This assignment has thus far been discussed on the assumption that the transaction as it occurred on the trial is correctly stated in the bill of exceptions by which it was sought to be preserved. It appears, however, that the court has undertaken to modify it. It is difficult to determine from the modification, read in connection with the body of the bill, whether the objectionable answers were drawn out by appellant or by appellee upon redirect examination based upon some supposed new matter drawn out by appellant. Of course, if appellant's questions drew out the objectionable answers, he can not be heard to complain. In the state of the record on this bill we would not reverse upon this point, but in view of another trial have announced what we conceive to be the rule controlling the admission of such evidence.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*