## W. G. Fleming v. J. E. Mattinson et al.

### Decided December 3, 1908.

**Libel—Charge of Lying.**

A publication in a newspaper charging plaintiff with lack of veracity is libelous per se, and actionable without allegation of special damage.

Appeal from the District Court of Franklin County. Tried below before Hon. P. A. Turner.

*Rolston & Ward* and *R. T. Wilkinson,* for appellant.—Where the publication is libelous per se, there is no necessity for the petition to set out special damages; but a recovery may be had without pleading or proof of special damages. Title 65a, sec. 1, Acts of the 27th Legislature, p. 30; Walker v. San Antonio Light Pub. Co., 70 S. W., 558; Cranfill v. Hayden, 10 Texas Ct. Rep., 142; Burton v. O'Neel, 6 Texas Civ. App., 613; White v. Nichol, 45 U. S., 266; Riley v. Lee, 11 S. W., 713; Allen v. Wortham, 13 S. W., 73; 25 Cyc., 343-347, 225, 250-255.

Written charges imputing falsehood, in direct form, or words implying want of veracity, are libelous per se. Such is the law as announced in the following cases and States: Lindley v. Horton, 27 Conn., 58; Paversich v. New England Life Ins. Co., 122 Ga., 190; Over v. Schilling, 102 Ind., 191; Gabe v. McGinniss, 68 Ind., 538; Prewitt v. Wilson, 128 Iowa, 103; Jensen v. Damm, 103 N. W. 798; Allen v. Wortham, 89 Ky., 485; Riley v. Lee, 11 S. W., 713; Rider v. Rulison, 74 Hun., 239; Brooks v. Bemis, 8 Johns., 455; Snowden v. Lindo, 1 Cranch., C. C., 569.

*R. E. Davenport* and *Templeton, Crosby & Dinsmore,* for appellees. —The publication complained of by appellant is not libelous per se, and, no special damages being alleged, the petition did not state a cause of action and the general demurrer of appellees to the petition of appellant was properly sustained. Morrison v. Dean, 104 S. W., 505; Hirschfield v. Bank, 83 Texas, 452; Knapp v. Campbell, 14 Texas Civ. App., 199; Fry v. McCord, 33 S. W., 568.

WILLSON, Chief Justice.—The suit was by appellant against appellees. The appeal is from a judgment sustaining a general demurrer to appellant's petition and dismissing his suit.

In his petition appellant alleged that he wrote and had printed in the Optic, a newspaper published in Mt. Vernon, a letter as follows:

"Lavada. I will again try to write to the dear old Optic but if I

escape the waste basket I shall be surprised. Health good. T. L. Leak has been quite indisposed but is much improved. Farmers are somewhat behind owing to excessive rainfall.

"Have noticed several discussions pro and con of the road question, but have seen nothing in regard to our depleted treasury. We have no visible cause. I have lived in the county since its organization. The courthouse and jail were built ere the tax valuation reached the million dollar mark, the rate of taxation had never exceeded 77½ cents on the $100, script was always at par. After that debt was paid the tax was reduced to fifty cents on the $100, as it seems our treasury was growing so large as to cause temptation. But since our assessment has nearly reached the two million mark, nothing building, the same number of officials, the tax is $1.17½ cents on the $100, yet our treasury is defunct, our script is no good and no visible reason for it which prompts me to ask a question: 'What is the matter?' let any one who knows answer, be he taxpayer, candidate or official. I have other questions to ask when this one is answered. Success to the Optic. Signed W. G. Fleming."

He then alleged in his petition as follows:

"That afterwards, to wit, on the 8th day of June, 1906, the said defendants composed and caused to be published in the Mt. Vernon Optic, a newspaper of wide circulation in Franklin County and in other counties in which the plaintiff is known, the following statements. After stating in length the reason for writing the said article stated as follows: "The way the matter started (meaning the letter of plaintiff set out above) and the order in which the different documents have been printed (meaning the above letter) in the Mt. Vernon Optic, and the barefaced falsehoods (meaning statements of the plaintiff in the above letter) which have been made, shows, we think, a well arranged premeditated plan and in a very ordinary grade of cheap politics. The people already know that this is election year. They also know that the political demagogue is now working with might and main to secure the advantage for his favorite candidate. He has a few boosters and strikers (meaning the plaintiff) scattered over the county—who are like jumping jacks, when the string is pulled the jack jumps and wiggles. The first wiggle of jack in this instance was several weeks ago, when there was published in the Mt. Vernon Optic a letter from W. G. Fleming (plaintiff) who lives over on Sulphur and who delegates to himself the authority to look after the political and financial welfare of Franklin County. We see nothing wrong in this for we believe that every citizen should take an interest in the welfare of his county, but we believe that when he does do this he should do so fairly and honestly. Mr. Fleming (the plaintiff) at one time ran for the position now held by one of our members, that of county commissioner of Pre. No. 2. His home people either did know what a financial genius he is or else they knew him too well (meaning plaintiff) for they missed the opportunity of a lifetime as they elected him to stay at home and another man to come to Mt. Vernon and draw the per diem. This was a sad catastrophe indeed, but we humbly beg our critics not to hold us responsible for this great public calamity. This letter came like a mournful wail of a dying calf; it (meaning the letter of plaintiff set out above) had

a painfully pathetic whine to it and it would not be worth a passing notice if it were not that one of its falsehoods is so much larger than all the rest that we will tell the people the truth about it. This man (meaning plaintiff) has the gall to tell the people of Franklin that the county tax rate is $1.17½ cents on the $100 valuation. The poor fellow (meaning plaintiff) is to be pitied for his freshness, for he (meaning plaintiff) shows that he (meaning plaintiff) knows no more about the tax rate of Franklin County that a Hottentot or Tyler Ellis, the colored man who plays the porter act for the District Court. It may be that he (meaning plaintiff) was in the condition that men sometime get in when they feel rich and that the world is theirs b'gosh. When Billie (meaning plaintiff) made the extra assessment on your lands and chattels he failed to notify the tax·assessor that he had levied, and so you did not have to pay it. Take your tax receipt and on the upper right hand corner you will find the value of your property as it is shown on the tax rolls. If you had one hundred dollars worth of property and paid your tax before the rebate was taken off you should have paid $1.02 3/20, or if after the rebate was taken off 87 3/20 cents. If Mr. Fleming is telling the truth then you paid $1.17½ county tax and .38 State tax, making $1.55½ cents on the $100 valuation. So if you had one thousand dollars worth of property according to Fleming you paid $15.55 taxes. If you find that you did not then you will begin to understand what kind of cattle (meaning plaintiff) the Commissioners' Court has to contend with.—Mr. Mitchell has a bad case like Mr. Fleming (the plaintiff), is a man of many functions, and like him (meaning plaintiff) his main function is to be very carefully avoided, telling the truth, (meaning by this to charge the plaintiff to be untruthful).—This shows a close relationship between Billie, the political sage of Sulphur prairie, and Ebb, the political prince of the southwest corner.' "

It did not appear from the allegations in the petition that because of the publication·complained of appellant had suffered special damages in any sum.

*After Stating the Case.*—Unless the publication made the basis of appellant's suit contained matter per se libelous as to him, the court did not err in sustaining the demurrer to his petition. For where the matter is not in itself libelous, in the absence of special damages resulting from its publication a cause of action does not accrue in favor of any one. 18 Am. & Eng. Ency. Law, p. 1085; Newell on Slander and Libel, sec. 16 et seq.; McQueen v. Fulgham, 27 Texas, 470. Therefore the question arising on the face of the record is: Did the publication complained of contain matter per se libelous as to appellant? If it did, the judgment of the trial court should be reversed; otherwise it should be affirmed.

We think it must be said that the publication was per se libelous, and that the court erred in sustaining the demurrer. That portion of it reading: "It," referring to the letter written by appellant, "would not be worth passing notice if it were not that one of its falsehoods is so much larger than all the rest that we will tell the people the truth about it," clearly imputes to appellant a lack of veracity. Such an

imputation must, we think, be construed to have been libelous. Walker v. San Antonio Pub Co., 30 Texas Civ. App., 165. The publication complained of therefore must be said to have been of that character. Cranfill v. Hayden, 97 Texas, 559. Our statute defines a libel as "a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure one who is alive, and thereby expose him to public hatred, contempt, or ridicule, or financial injury, or to impeach the honesty, integrity or virtue or reputation of anyone, or to publish the natural defects of anyone, thereby exposing such person to public hatred, ridicule, or financial injury." Acts 1901, p. 30. It may be doubted if the definition of the statute materially differs from definition expressive of the common law. But it can not, we think, be doubted that the statutory definition is broad enough to include within its terms any case which, in the absence of the statute, would be held to be within the common law definitions of a libel. There can be no doubt that, at common law, to publish of a person in writing that he was mendacious, or that he had uttered a falsehood, was libelous per se. 18 Am. & Eng. Ency. Law, p. 921, and authorities there cited. Such a publication is a direct impeachment of the honesty and integrity of the person against whom it is directed, and its tendency necessarily is to injure him by exposing him to public hatred and contempt. "Truth," said the court in Riley v. Lee, 88 Ky., 603, 21 Am. St. Rep., 362, "is not only enjoined by the divine law, but the amity, happiness, and welfare of society are hinged upon it; and no man can or ought to enjoy a reputation as that of an honest and honorable man unless he speaks the truth on all occasions. Falsehood is degrading; it ought to degrade the man that tells it, and leave him a mere hulk, standing on the outskirts of society; and to charge him with it certainly tends to degrade him." And see Hatt v. Evening News Association, 53 N. W., 952; Burton, Lingo & Co. v. O'Niell, 6 Texas Civ. App., 613.

The judgment of the lower court is reversed and the cause is remanded for a trial on its merits.

*Reversed and remanded.*