### ALLEN v. EARNEST et al.

(Court of Civil Appeals of Texas. Dallas. Feb. 24, 1912.)

1. LIBEL AND SLANDER (§ 100*)—ACTIONS—ACTUAL DAMAGE.

Unless libelous per se, there can be no recovery for the publication of a libel without allegation and proof of special damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 246–272; Dec. Dig. § 100.*]

2. LIBEL AND SLANDER (§ 16*)—WORDS "LIBELOUS PER SE."

In view of Acts 27th Leg. c. 26, defining libel, words libelous per se are and from the publication of which damages are implied as a matter of law are such words as tend to expose one to public hatred or disgrace or vilify him or injure his character.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1–9; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 8, p. 7705.]

3. LIBEL AND SLANDER (§§ 38, 46*)—"PRIVILEGED COMMUNICATION" — "ABSOLUTELY PRIVILEGED COMMUNICATION" — "QUALIFIEDLY PRIVILEGED COMMUNICATION."

Privileged communications fall into two classes, those absolutely privileged, such as the opinions of judges, and others qualifiedly privileged, such as publications made to protect the rights of the one publishing.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 117–123, 131, 141–143; Dec. Dig. §§ 38, 46.*

For other definitions, see Words and Phrases, vol. 1, p. 45; vol. 6, pp. 5591–5598; vol. 8, p. 7764.]

4. LIENS (§ 9*)—WORDS ACTIONABLE PER SE —"RELIABLE"—"GOOD."

Defendant in complaining of plaintiff, a general freight agent, wrote to the general manager of the railroad that plaintiff told him one thing and wired the agent another, and concluded with a separate paragraph, saying that the plaintiff was not a reliable man in any respect, and that his word was not good with people who knew him. *Held* that, in view of the arrangement of the letter which showed that the last paragraph related to plaintiff's personal character, the communication was libelous per se, as tending to injure him in his business; the letter charging him with not being "reliable" in any respect, which means untrustworthy, and that his word was not "good," the word "good" as applied to one's word meaning untarnished, honorable; and so action might be maintained without allegation of special damage.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 29; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 4, pp. 3105–3107.]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by J. W. Allen against D. C. Earnest and another. From a judgment dismissing the petition, plaintiff appeals. Reversed and remanded.

Thomas & Rhea, for appellant. Etheridge & McCormick, for appellees.

RASBURY, J. Appellant instituted this suit to recover damages of appellees for the publication of an alleged libel; the petition being as follows:

"Now at this time comes J. W. Allen, plaintiff in the above entitled and numbered cause, by his attorneys, leave of the court first had and obtained, and files this his first amended original petition in lieu of and as a substitute for his original petition filed on the 12th day of February, A. D. 1910, and complaining of D. C. Earnest and Consumers' Lignite Company, hereinafter styled the defendants, respectfully represents, and shows:

"(1) That plaintiff is a resident and citizen of the city of St. Louis, county of St. Louis, state of Missouri, but was at the time of the matters herein complained of a resident and citizen of Dallas county, state of Texas. That the defendant Consumers' Lignite Company is a corporation duly and legally incorporated under the laws of the state of Missouri, with its principal office

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

and domicile in the county of Dallas, state of Texas, and that D. C. Earnest is the president of said corporation and general manager thereof.

"(2) That this plaintiff was at the time of the injuries hereinafter complained of, and had been for many years prior thereto, in the employ of the Missouri, Kansas & Texas Railway Company of Texas, with headquarters at Dallas, county of Dallas, state of Texas, as general freight agent, which position was to this plaintiff one of honor and profit, and in which capacity he received from said railway company an annual salary of six thousand ($6,000) dollars; that this plaintiff had, and always has, enjoyed the reputation of being a reliable, honest, and trustworthy man among his associates, and among those who knew him, and especially among the representative citizens of Dallas county and the representative citizens of the state of Texas. That A. A. Allen was at the time of the injuries herein complained of the president and general manager of the said railway company, and this plaintiff had known the said A. A. Allen for many years, and had always enjoyed the trust, esteem, and good opinion of said A. A. Allen, and also the trust, esteem, and good opinion of all the other officers and agents of said railway company. That this plaintiff was, at the time of the injuries herein complained of, of the age of, to wit, 50 years, and had spent the greater portion of his life in railway service, and had specially equipped himself for railway service, and particularly for the traffic department of railway companies, and especially of the said Missouri, Kansas & Texas Railway Company of Texas, and had no other occupation and no other means of livelihood, and was at such an age in life when it would be difficult to secure other means of employment and other means of livelihood than railway service.

"(3) That the said Consumers' Lignite Company, of which the said defendant D. C. Earnest is the president and general manager, is engaged in the coal and lignite business; its mines thereof being located and situated in Wood county, Tex., and located adjacent to and on the lines of the Missouri, Kansas & Texas Railway Company of Texas. The said Consumers' Lignite Company in the sale and shipments of its fuel from said Wood county uses the lines of railway of said Missouri, Kansas & Texas Railway Company of Texas, and has business relations with the traffic department of said Missouri, Kansas & Texas Railway Company of Texas of which this plaintiff, as general freight agent, had charge. That some time during the latter part of the year 1909, on account of some misunderstanding between the said D. C. Earnest and said Consumers' Lignite Company with the traffic department of said railway company, concerning the routing of two cars of lignite, the said defendant, Consumers' Lignite Company, acting through its

president, D. C. Earnest, entered into correspondence with the said A. A. Allen, president and general ·manager of the said Missouri, Kansas & Texas Railway Company of Texas, relative to the alleged misrouting and improper routing of said two cars of lignite, and in the course of said correspondence relative to the business of said Consumers' Lignite Company the said defendants and each of them, the Consumers' Lignite Company, acting by and through its president, D. C. Earnest, did on, to wit, the 24th day of December, A. D. 1909, in a letter addressed to the said A. A. Allen, president and general manager of the Missouri, Kansas & Texas Railway Company, at St. Louis, Mo., a copy of which letter is hereto attached, marked 'Exhibit A' and made a part hereof, falsely and maliciously write, dictate, and cause to be written in said letter of and concerning this plaintiff the following libelous and slanderous matter, to wit: 'General Freight Agent Allen is not a reliable man in any respect, and his word is not good with people who know him, and I am one of those who do know him'—thereby intending to charge, and charging, him that this plaintiff was wholly unreliable and unfit for the position which he occupied with said railway company, and that this plaintiff was wholly unworthy of belief among the people who knew him, and that the defendants and each of them knew him to' be a man unworthy of belief, and who could not be trusted in any capacity, where honor, integrity, or truthfulness were involved. That the said defendants and each of them caused said letter with said false, libelous, and slanderous matter to be published by depositing and causing to be deposited the same in the United States mail at Dallas, Tex., addressed to the said A. A. Allen at St. Louis, Mo., and the same was received in due course of mail by the said A. A. Allen, president and general manager of said railway company. That the said defendants and each of them intended that said A. A. Allen should understand that said defendants were referring to said plaintiff in said libelous matter and the said A. A. Allen did so understand said communication. That said defendants and each of them intended that the said A. A. Allen should by reason of said libelous and scurrilous matter understand that they and each of them were charging this plaintiff with being wholly unreliable and unfit for the position which he occupied with said railway company, and that this plaintiff was wholly unworthy of belief among the people who knew him, and that the defendants and each of them knew him to be a man unworthy of belief, and he could not be trusted in any capacity where honor, integrity, and truthfulness were involved, and the said A. A. Allen so understood said libelous and scurrilous matter. That said libelous statement was false in every particular, and was known by the defendants and each of them to be false, and that in writing and causing

to be written and dictating and publishing said libelous and scurrilous statement of and concerning this plaintiff said defendants and each of them were actuated by ill will, malice, and hate toward this plaintiff, and same was made with the express purpose and intention to injure and harass this plaintiff, and for the purpose of bringing him into contempt and ridicule, and injuring his good name among the people with whom he lives and associates, and for the purpose and with the intent of injuring him with his employer, and for the purpose and intention of depriving him of the means of a livelihood. That the means adopted by the said defendants for the purposes herein stated were such as to reasonably cause and bring about the results which they intended, as aforesaid. That on account of said libelous and scurrilous matter written, dictated, and published by said defendants, as aforesaid, this plaintiff has suffered, and will continue to suffer in the future, great damage in his reputation and in his business employment, and great mental anguish, all to his actual damage in the sum of fifty thousand ($50,-000) dollars. That on account of the willful, malicious, and wrongful acts of the defendants and each of them, as aforesaid, he has sustained exemplary damage in the sum of fifty thousand ($50,000) dollars, and by reason of the facts as herein stated the defendants and each of them become liable and bound to pay to this plaintiff his said damages both actual and exemplary, as aforesaid.

"Wherefore, premises considered, your petitioner prays the defendants and each of them having been cited to appear and answer herein that upon a hearing hereof he have judgment for his said damages both actual and exemplary against said defendants, and each of them, and for all costs of suit, and for all such other and further relief as he may be entitled to under the facts as herein set forth, and for general relief."

· Attached to the petition as an exhibit was the alleged libelous letter in full, as follows:

"Dallas, Texas, Dec. 24th, 1909.

"Mr. A. A. Allen, Pres. & Gen. Mgr., M. K. & T. Ry. Co., St. Louis, Mo.

"Dear Sir: Answering yours of the 15th, in which you state that General Freight Agent Allen is not trying to embarrass us in the routing of our business, but is endeavoring to handle the traffic to the best possible advantage.

"This is a mere statement and; coming from you, should be reasonably accurate, but the record does not bear you and J. W. Allen out. The record shows that we 'phoned to his office desiring to know how he preferred us to route the two cars of lignite to Jefferson, Texas, and the reply was via Mineola. We then routed these cars that way, the agent refused to take them that way, wired to Dallas for instructions and

General Freight Agent Allen wired him to take the cars via the M. K. & T. If General Freight Agent Allen has no spite against the company and really desires to move our freight without delay, please explain why he tells us one thing and wires his agent another thing.

"General Freight Agent Allen is not a reliable man in any respect and his word is not good with people who know him, and I am one of those who do know him. Yours very truly, Consumers' Lignite Company, D. O. Earnest, President."

February 16, 1910, the trial judge sustained appellees' general demurrer to appellant's petition, and, appellant declining to amend, the cause was dismissed, with costs against appellant. From the judgment of the trial court appellant has appealed.

Appellant presents a single assignment of error, as follows: "The trial court erred in sustaining the general demurrer to plaintiff's first amended original petition and dismissing his suit." In determining whether the trial court erred in sustaining the appellees' general demurrer and dismissing appellant's suit, it is necessary to ascertain whether the publication was libelous per se.

[1] The petition alleged no special damages, and, if the printed words were not libelous per se or the publication was a privileged communication, there can be no recovery except upon allegation and proof of special damages.

[2] A generally accepted definition as to what words constitute libel per se and from the publication of which damages is necessarily implied and follow as a matter of course is "that language in writing is actionable per se which denies to a man the possession of some such worthy quality, as every man is, a priori, to be taken to possess, or which tends to bring a party into public hatred or disgrace, or to degrade him in society, or to expose him to hatred, contempt or ridicule, or which reflects upon his character or imports something disgraceful to him, or throws contumely on him or contumely and odium, or tends to vilify him, or injure his character, or diminish his reputation, or which is injurious to his character, or to his social character, or shows him to be immoral or ridiculous, or induces an ill opinion of him or detracts from his character as a man of good morals or alters his situation in society for the worse or imputes to him a bad reputation or degradation of character or ingratitude." Knapp & Co. v. Campbell, 14 Tex. Civ. App. 199, 36 S. W. 766. See, also, Townshend, Sland. & Lib. § 176. It is said by Odgers: "Whenever the words clearly 'sound to the disreputation' of the plaintiff, there is no need for further proof. They are defamatory on the face of them and actionable per se." "The nature of the charge must be such that the court can legally presume the plaintiff * * *

has suffered either in his property, character, or business * * * in consequence of the publication." Cooley, Torts, p. 240 (206). Our statute (Acts 1901, p. 30) defines libel as anything printed, etc., tending to injure the reputation of the living, and thereby expose him to public hatred, contempt, ridicule, or financial injury or to impeach the honesty, integrity, virtue, or reputation of any one. The foregoing is not the statutory definition in full, but is as much thereof as is applicable to the case under consideration.

[3] As relates to privileged communications, the court say in case of Knapp & Co. v. Campbell, supra: "Privileged communications are usually divided into those absolutely privileged and those only conditionally so. By an absolutely privileged publication is meant one which, by reason of the occasion upon which it is made, no remedy is provided for the damages in a civil action for slander or libel. Such are the opinions of judges of superior courts and the speeches of members of Congress or Legislatures. The other class of privileged publications, taking such a wide range, are not so easily defined." Townshend defines it as the privilege to "publish, by speech or writing, whatever he honestly believes is essential to the protection of his own rights, or to the rights of another, provided the publication be not unnecessarily made to others than to those persons whom the publisher honestly believes can assist him in the protection of his own rights, or to those whom he honestly believes will, by reason of a knowledge of the matter published, be better enabled to assert, or to protect from invasion, either their own rights, or the rights of others intrusted to their guardianship."

[4] It is proper to state also, in view of the allegations of appellant's petition, that it is a general and well-recognized principle of law that words not actionable per se sometimes become so if spoken of one engaged in a particular calling or profession, provided the words charge him with fraud, indirect dealings, or incapacity, and tend to injure him in his trade or business. 18 Am. & Eng. Enc. Law, 942. The words used in this case and claimed to be libelous per se are: "General Freight Agent Allen is not a reliable man in any respect, and his word is not good with people who know him, and I am one of those who do know him." Tested by the foregoing principles, are they libelous per se? Our appellate courts in passing on this question hold the following to be libelous per se: A publication that imputes a lack of veracity (Fleming v. Mattinson, 52 Tex. Civ. App. 476, 114 S. W. 650); any publication that tends to injure the reputation (Walker v. Publishing Co., 30 Tex. Civ. App. 165, 70 S. W. 558); a charge that one is confederating to mismanage the affairs of a business corporation in order to destroy the value of the corporate stock thereby enabling him to purchase same and secure control of the company (Wallis v. Walker, 73 Tex. 8, 11 S. W. 123); to accuse of "falsehood," as held in Riley v. Lee, 88 Ky. 603, 11 S. W. 713, 21 Am. St. Rep. 358, and approved in Fleming v. Mattinson, supra; to say that one who is indebted to another is about to leave the country and, if he does, "good-bye note" (Sanders v. Hall, 22 Tex. Civ. App. 282, 55 S. W. 594).

The letter under discussion was written to A. A. Allen by appellees, and debates with him the question of whether or not General Freight Agent Allen, appellant, is or is not trying to embarrass appellees in routing their shipments of freight, and vigorously calls attention to the fact that after promising one routing appellant, without reasonable excuse, routed it another direction, and demands to know why such methods are used if General Freight Agent Allen has no spite against appellees and really desires to move appellees' freight without delay. Then, by separate paragraph, follows the charge that General Freight Agent Allen is "not a reliable man in any respect," and that his word is "not good." This charge, it will be noticed, is detached by paragraph from the balance of the letter, and is entirely disconnected from the subject-matter of the letter, thereby presenting another subject; for, as will be seen, by the first part of the letter the mismanagement of freight matters on the part of General Freight Agent Allen had been made clear, and nothing remained to be said. Then it is that the appellee Earnest takes up General Freight Agent Allen personally, and charges that he is not "reliable in any respect," and that "his word is not good." Reliable means "fit or worthy to be relied on; to be depended on; trustworthy." Not reliable, of course, would mean unfit, or unworthy to be relied upon, untrustworthy. Good, as applied to one's name or word, means in its ordinary acceptation, "fair, untarnished, honorable." Hence it follows that we cannot agree with the conclusions of the trial judge, for in our opinion the charge that General Freight Agent Allen was not reliable in any respect, and that his word was not good among those who knew him was libelous per se, and that such words come within the rule that presumes injury from their publication, and it follows that it was not necessary for appellant to allege special damages in order to submit his case upon the facts alleged, and that the trial court erred in sustaining appellees' general demurrer.

The judgment is reversed and the cause remanded.