**LARTIGUE v. SOUTHERN MUT. BEN. ASS'N et al.   (No. 1139.)**

(Court of Civil Appeals of Texas. Beaumont. Oct.· 30, 1924.)

**1. Libel and slander ⬥6(2). 15—Publication charging one with being liar is libelous per se.**

Under Rev. St. art. 5595, as well as at common law, publication of circular charging one with being a liar is libelous per se.

**2. Libel and slander ⬥123(1) — Peremptory instruction for defendants held improper.**

Where defendants, after plaintiff proved publication of charge libelous per se, not having pleaded, could not prove truth of charge, the only defense available, and offered no evidence, a peremptory instruction for defendants was improperly given.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Action by F. J. Lartigue against the Southern Mutual Benefit Association and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Howth & O'Fiel, of Beaumont, for appellant. '

Blain & Jones and P. A. Dowlen, all of Beaumont, for appellees.

O'QUINN, J.   Suit by F. J. Lartigue against the Southern Mutual Benefit Association, a mutual aid association organized under the laws of the state of Texas, and W. E. Bratton, its president, and B. O. Peck, its secretary, seeking to recover $15,000 as damages on account of the publication by said de-

fendants of an alleged libelous circular containing statements about and . concerning plaintiff.

Defendants answered by general demur- rer, numerous special exceptions, and general denial. The record does not show any action taken as to the demurrers, and hence the case stands here, as if it went to trial, upon the answer of defendants only denying generally the allegations of plaintiff. The case was tried to a jury, but at the conclusion of the plaintiff's evidence, at the request of the defendants, the court instructed the jury to return a verdict for the defendants, which was done, and judgment in favor of defendants rendered thereon. From this action of the court and consequent judgment, plaintiff appealed. From the record, we find the following facts:

(1) The defendant Southern Mutual Benefit Association is a local mutual aid benefit association, domiciled at Beaumont, Tex., engaged in the business of writing sick and accident insurance, owned and operated by W. E. Bratton and B. O. Peck. They were engaged in this business in 1917, and then plaintiff, Lartigue, became associated with them as agent, and later he became a member of the association—one-third owner .and secretary—the business then being owned and conducted by Bratton, Peck, and Lartigue. On August 22, 1921, the partnership in the business was, by mutual consent of the parties, dissolved, Lartigue retiring from the association. The rights of the parties upon the dissolution aforesaid were fixed by the following contract in writing:

"State of Texas, county of Jefferson.

"Know all men by these presents: It is hereby mutually agreed by and between W. E. Bratton, B. O. Peck, and Frank J. Lartigue, that their partnership in the Southern Mutual Benefit Association on its former basis is now dissolved and all previous agreements are now annulled. Under this agreement, which becomes effective tó-day, W. E. Bratton and B. O. Peck are to have full ownership and control over the Beaumont business which now lies south of the Southern Pacific railroad tracks, and the Port Arthur business, and such additional business as they and their agents may develop or acquire in any other territory.

"It is further agreed that Frank J. Lartigue is to have full ownership and control over the Beaumont business which now lies north of the S. P. railroad tracks, and also the Orange and the Sour Lake business,' and such additional business as he and his agents. may develop or acquire in any other territory. W. E. Bratton and S. O. Peck are to be responsible for the claims and expenses which occur in the debits assigned to ·them. Frank J. Lartigue is to be responsible for the claims and expenses which occur in the debits assigned to him.

"W. E. Bratton, B. O. Peck, and Frank J. Lartigue are to pay one-third each of the amount of taxes now due the United States government. Hereafter the business of W. E. Bratton and B. O. Peck, on the one hand, Frank

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
· ,

J. Lartigue, on the other, shall be conducted the same as two separate concerns, neither having any jurisdiction whatever over the other business on account of his name as an official in this concern. Future deals and arrangements shall be made on the same basis as outside parties make with one another.

"Signed this date August 22, 1921.

"[Signed]  W. E. Bratton.
"[Signed]  B. O. Peck.
"[Signed]  Frank J. Lartigue."

(2) After the execution of this agreement, Lartigue continued to operate under the name of the Southern Mutual Benefit Association, though not as a member of it, until April 1, 1922, when he organized the Metropolitan Mutual Benefit Association. Pennie Henderson, a colored woman at Orange, Tex., held a policy issued by the Southern Mutual Benefit Association at the time of Lartigue's severance from said association, August 22, 1921, and under the agreement above set out she belonged to the business taken over by Lartigue. He collected her dues as a policy holder of the Southern Mutual Benefit Association up to and until March 27, 1922, but as she refused to transfer her policy from the Southern Mutual Benefit Association to his (Metropolitan Mutual Benefit Association), and insisted on staying in and with the Southern Mutual Benefit Association, he told her she had better send her dues to said association thereafter, which she did, and which they refused to accept, and returned to her.

(3) Pennie Henderson died about May 9, 1922. The Southern Mutual Benefit Association was compelled by suit to pay the policy. Lartigue testified that he was not liable for the policy, and that he was not called upon to pay same.

(4) After paying the Pennie Henderson policy on about May 15, 1922, defendants had printed and circulated the following circular, of which plaintiff complains, and upon which this suit is based:

"The Southern Mutual Benefit Association.

"Home Office Beaumont. Room 14 N. Blanchette Bldg.

"Pennie Henderson died on May 9, 1922, in Orange, Texas. She had been a member of the Southern Mutual since April 10th, 1916. But during March, 1922, our ex-Secretary, Frank J. Lartigue, organized the Metropolitan Mutual and changed all the Southern Mutual members in Orange over to his new association. He kept collecting right on from the Orange people and told them that he would give them the same protection which they had had in the Southern Mutual.

"When Pennie died, Frank J. Lartigue, president of the Metropolitan Mutual, *refused* to pay her claim, and told her children that she still belonged to the Southern Mutual. However, her receipt book shows that he collected all her dues up until her death, and appropriated the money to his own use.

"After waiting a reasonable time we became convinced that there was no chance for Pennie's children to get anything from the Metropolitan. Then *the Southern Mutual stepped in and paid the death claim* of $70.00 out of sympathy for the poor woman and the children she left behind.

"The Pennie Henderson Case Should be Sufficient Evidence to Anybody That the Southern Mutual Is the Association upon which You can Really Depend.

"Now, for your own good, do not be deceived by the lies Frank J. Lartigue is telling you that the Southern Mutual is broke and out of business.

"Do not be disturbed by the malicious slander he is using against W. E. Bratton, who picked him up and made him secretary of the Southern Mutual without a cent and gave him a chance to make what little money and property he owns to-day. As we do not consider this fellow worth going to any trouble about, we are either paying no attention or just laughing at what he says.

"With cool heads we are going ahead attending to our own business, paying our claims, getting back our members in the north end and Orange as fast as we can see them, and are pushing through an easy fight to an easy victory.                W. E. Bratton, President.
"B. O. Peck, Secretary."

Appellant presents two propositions, both complaining that the court erred in peremptorily instructing a verdict for the defendants. The court erred in directing the verdict. Article 5595, Revised Statutes, provides:

"A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury."

[1] The statutory definition of libel does not materially differ from that expressive of the common law, and it has been held that the statute is broad enough to include within its terms any case which, in the absence of the statute, would be held to be within the common-law definition of a libel. Fleming v. Mattinson, 52 Tex. Civ. App. 476, 114 S. W. 651. At common law, to publish of a person that he was a liar was libelous per se. 18 Am. & Eng. Ency. of Law (2d Ed.) 921. The circular unquestionably charged appellant with untruthfulness—with being a liar—that he was telling lies; this being its nature, it is libelous per se. Mitchell v. Spradley, 23 Tex. Civ. App. 43, 56 S. W. 134; Fleming v. Mattinson, 52 Tex. Civ. App. 476, 114 S. W. 650; Hibdon v. Moyer (Tex. Civ. App.) 197 S. W. 1117.

[2] After plaintiff proved that defendants published and circulated the circular in question, containing the language complained of, the only defense available to de-

ffendants was proof of the truth of the charge. This they did not plead, and, of course, without pleading could not prove. They offered no evidence, but simply demurred to the sufficiency of the plaintiff's evidence by asking for an instructed verdict.

Other questions are presented, but as they may not arise upon another trial, they they are not discussed. The peremptory instruction was improperly given.

Reversed and remanded.