## Courier Journal Co. v. Noble.

(Decided Dec. 5, 1933.)

O. H. POLLARD, R. L. POLLARD and PETER, LEE, TABB, KRIEGER, & HEYBURN for appellant.

H. L. SPENCER, G. C. ALLEN and J. G. C. SPENCER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Lizzie Noble, a widow 57 years of age, owned and lived in a two-story frame building of eight rooms on Broadway street in the city of Jackson, and made her

livelihood by renting her down stairs to Mrs. Lizzie Mc-Farland for $10 a month, and keeping roomers in the up stairs of the building.

On November 2, 1927, the Courier Journal publish-ed the following article:

"Constable Shot During Raid Dies

"Breathitt Officer Succumbs at Hospital; slay-er is still at large. Special to the Courier-Journal Jackson, Ky., Nov. 2.—Constable Henry Spencer, 39 years old, died early today in Dr. Bach's hos-pital here of bullet wounds inflicted Saturday by Dexter Howard, 40, who killed Chief of Police John E. Miller, 44, during a liquor raid on the home of Mrs. Lizzie Noble, on the outskirts of Jackson. Spencer was shot through the abdomen and hip and an operation had been performed in efforts to save his life. He is survived by his wife and three children.

"Howard is still at large. He escaped to the hills with Sam Engle and Gran Spencer who had been arrested in the raid. Posses that searched the mountains failed to apprehend them."

Alleging that the publication was false and malic-ious, that the defendant meant thereby to convey, and did convey, the impression that she was an unlawful dealer in whisky, and by reason of, and as a direct result of, said publication, that she had been injured in her reputation and her tenants had vacated the property, and she had been unable to lease or rent any of her rooms since that time, Mrs. Noble brought this suit against the Courier Journal Company, publisher of the Courier Journal, to recover damages in the sum of $25,000. The defendant denied that plaintiff had been damaged, and that the publication was false or malic-ious, and further pleaded that the publication was sub-stantially true. A trial before a jury resulted in a verdict and judgment of $3,100, and the Courier Journal Company appeals.

It is first insisted that appellant was entitled to a peremptory instruction on the ground that the pe-tition did not state a cause of action, and in this con-nection it is argued that an innuendo cannot extend the words beyond their natural import, and that the words "during a liquor raid" do not necessarily mean that

the owner of the house raided was an unlawful dealer in whisky, and that a person may be an unlawful possessor of liquor and still not be "an unlawful dealer in whisky." We are unable to sustain this position. While spoken words are slanderous per se only if they impute crime, infectious disease, or unfitness to perform duties of office, or prejudice one in profession or trade, or tend to disinherit him, written or printed publications, which are false and tend to injure one in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame, are libelous per se. Riley v. Lee, 88 Ky. 603, 11 S. W. 713, 11 Ky. Law Rep. 586, 21 Am. St. Rep. 358; Axton-Fisher Tobacco Co. v. Evening Post Co., 169 Ky. 64, 183 S. W. 269, L. R. A. 1916E, 667, Ann Cas. 1918B, 560. In view of this rule, we are inclined to the opinion that, fairly construed, the words "during a liquor raid on the home of Mrs. Lizzie Noble" carried with them the imputation that she was violating the Prohibition Act in her home, and, being not only such as to injure her in her reputation and expose her to shame and disgrace, but such as to prejudice her in her business, they are libelous per se, and therefore susceptible to the meaning given them by the innuendo. It follows that appellant was not entitled to a peremptory instruction on the ground that the petition as amended did not state a cause of action.

The next insistence is that, if the words "during a liquor raid on the home of Mrs. Lizzie Noble" carried with them the imputation that Mrs. Noble was an unlawful dealer in whisky, appellant proved that the imputation was true, and therefore the case should not have gone to the jury. The record discloses that the officers on the occasion in question entered the home of Mrs. Lizzie Noble, not for the purpose of searching her home for liquor, but for the purpose of arresting Dexter Howard, Granville Spencer, and Sam Engle, who had entered the lower part of the Noble home. Not only was it not shown that there was any liquor in the home at the time, but Mrs. Noble testified that there was none there then, and had been none there since 1923. Opposed to her testimony is her admission that she pleaded guilty in federal court in 1923 to a charge of unlawful possession of whisky, and was fined $100, which she paid, and the evidence of several reputable witnesses, to which there was no objection, that her

moral reputation was bad, that she had the reputation of being an unlawful dealer in liquor, and that the general reputation of her home was that of a place where liquor was sold. In view of the conflict in the evidence, we cannot say as a matter of law either that the search was made for liquor, or that at the time liquor was being unlawfully possessed or sold on the premises, or that the verdict of the jury on that question is flagrantly against the evidence.

On the whole, we conclude that the instructions given by the trial court were as favorable to appellant as the circumstances required, and that the court did not err in refusing the instructions offered by appellant.

While several witnesses were permitted to testify that at the time of the publication, and for several years prior thereto, appellee had the reputation of being an unlawful dealer in whisky, and that her home had the reputation of being a place where liquor could be bought and sold, in two or three instances this character of evidence was excluded by the court. This was error, as the evidence tended to show that neither Mrs. Noble's reputation nor her business was injured by the publication.

Finally, it is insisted that the verdict is excessive. Mrs. McFarland, who rented the lower floor of the house, and who paid $10 a month, claimed to have left on account of the publication. Mrs. Noble testified that, after the publication, people stopped coming. However, she admitted that she had no regular boarders in the upstairs rooms, but "just comers and goers," who came during the federal and circuit court. At the time she testified her house was generally full of roomers during federal court, and at the last term of court she had had quite a crowd, and relied on that court mostly for her roomers. Here, then, we have a case where but little loss of business was shown, and, as appellee had been convicted in the federal court for a violation of the Prohibition Act, and at the time of the publication had the reputation of being an unlawful dealer in intoxicating liquor, it is not perceived how the publication seriously affected her reputation or the business in which she was engaged. In the circumstances, it cannot be doubted that the verdict of $3,100 is so far in excess of any damage that appellee could possibly have

sustained as to strike the mind at first blush as being the result of prejudice and passion, and therefore to require a reversal of the judgment.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.